CHARLES B. LEVY AND ELSA K. LEVY, PLAINTIFFS-APPELLANTS, v. C. YOUNG CONSTRUCTION CO., INC., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.

Argued February 17, 1958—Decided March 17, 1958.

[redacted]

*Mr. James A. Major* argued the cause for appellants.

*Mr. Pierre P. Garven* argued the cause for respondent (*Mr. George B. Gelman* and *Mr. David A. Gelber,* on the brief; *Messrs. Garven, Gelman & Hollander,* attorneys).

The opinion of the court was delivered by

WACHENFELD, J.   Plaintiffs brought suit in the county district court to recover damages for the cost of replacing a house sewer line alleged to have been defectively constructed by defendant.   They received a judgment for $649, but the Appellate Division reversed, 46 *N. J. Super.* 293 (1957), with one judge dissenting, bringing the plaintiffs here as a matter of right.   Since no stenographic record was taken of the proceedings in the district court, the cause was submitted upon an agreed statement of evidence, pursuant to *R. R.* 1:6–3.

Defendant constructed a house on Bayview Avenue in the Borough of Englewood Cliffs and sold it to plaintiffs in June of 1952 before it had ever been occupied.   The residence was connected to the municipal sewage system by a line running, at six to eight feet beneath the surface of the ground, some 62 feet from the cellar wall to the public main.

During the summer of 1953 the Levys discovered water in their cellar and called in a plumber named Van Drone,

who inserted a "snake" into the house line and thereby removed an obstruction. The condition did not recur until September of 1954, when Van Drone was again summoned and employed an "electric rooter" to displace an obstruction located 74 feet from the foundation wall of plaintiffs' home.

In April of 1955 the cellar once more filled with water, and this time Van Drone excavated and exposed a six-foot section of the house line at the point where it joined the public main. This section of pipe was found to be buckled and broken and was replaced. The plumber recommended replacing the entire house line, but this could not be accomplished for two months because of bad weather. During the interim, while the temporary six-foot section of new pipe was in place, plaintiffs' cellar did not flood. Eventually, however, a whole new house line was installed at a cost of $705.08, and no water has backed into the cellar since then.

Plaintiffs instituted their action in August of 1955, alleging the sewer line had been laid improperly and that defendants had violated a duty to see that the house "was constructed in a good and workmanlike manner with suitable materials."

Van Drone, who had been in the plumbing business for 27 years and at one time was the municipal plumbing inspector, testified the house line had been laid at an improper pitch, insufficient to carry off the flow efficiently by force of gravity, and that it had probably buckled and broken as the result of boulders being dropped on it during installation. The only portion of the house sewer line he had seen was the six-foot section exposed to view in April of 1955, and he was unable to testify as to the condition of the remainder of the pipe which had been removed.

The plumbing inspector of Englewood Cliffs, who held stock in the defendant company, was also called as a witness for plaintiffs. He stated that prior to its being covered over he had examined the pipe connecting the Levy house to the municipal sewer and that tests with a level had revealed it to be "properly pitched." He also said that the pipe would not have buckled during installation because it

had been laid upon solid ground. After examining the pieces of pipe admitted into evidence, he voiced the opinion that the six-foot section could have been injured by rocks being thrown on it, but also testified that use of an "electric rooter" could cause the same damage. Finally, he asserted that if, in fact, the house line had not been laid at an adequate pitch, the defect would have immediately manifested itself at the inception of use, with water and waste materials backing up each time the toilets were used.

The president of the defendant company testified in its behalf, after a motion for judgment at the close of plaintiffs' case had been denied, and stated that neither rocks nor boulders had been contained in the backfill for a depth of at least two feet above the pipe, which distance had been specially filled with clear dirt and sand before a bulldozer had commenced backfilling with the original excavated earth. The six-foot length of pipe, in his opinion, had been damaged by the workmen who replaced it. He fortified this view by pointing to "marks of a mechanical crane" on the pieces in evidence. The president conceded the pipe could have been broken by rocks at the time of installation but this was not his view as to what had occurred.

The Appellate Division determined the record "discloses no fact establishing negligence," and we are in accord. It concluded plaintiffs had the burden of establishing the breach of a duty engendered by express or implied warranty, and that since there were no express warranties plaintiffs must succeed, if at all, on the theory of implied warranty.

The Appellate Division found and applied the "prevailing law throughout the country" which negates the existence of any implied warranties connected with a sale of real estate and, in general, regards the seller's only obligations to the purchaser as those expressly set forth in the deed.

The dissenting judge agreed that this rule should prevail where the purchaser has actual knowledge of defects or could have obtained such by reasonable inspection of the premises, but he concluded that under the circumstances *sub judice* an exception was justified, saying:

"The acceptance of the deed for the house did not waive or impair plaintiff's right to claim and obtain damages for latent or hidden defects in the construction of the house. I think that the implied representations on the part of the defendant that it possessed a reasonable amount of skill necessary for the erection of a house, and that the house was erected in a proper and reasonably workmanlike manner were collateral to the deed of conveyance and that such representations did not merge in said deed."

The majority below admitted that the position it espoused had met with considerable criticism, especially when applied to new housing. "Vendor's Obligation as to Fitness of Land for a Particular Purpose," 77 *Minn. L. Rev.* 108 (1953); *"Right of Purchaser in Sale of Defective House,"* 4 *West. Res. L. Rev.* 357 (1953). It nevertheless defended the result reached, stating:

"* * * Were plaintiffs successful under the facts presented to us, an element of uncertainty would pervade the entire real estate field. Real estate transactions would become chaotic if vendors were subjected to liability after they had parted with ownership and control of the premises. They could never be certain as to the limits or termination of their liability."

We conclude there is no liability here, but for reasons totally different from those relied upon by the Appellate Division. Whether the widely established rule followed below is harsh and inequitable and should be rejected, or whether it is sound and workable and should be adopted, is a question we are not called upon to decide in light of our view of the case *sub judice.*

The defendant aggressively contends that even after resolving every conflict of testimony in favor of plaintiffs there is still insufficient evidence to support the judgment rendered, and we agree.

The drainage system involved here worked by force of gravity, the house line pitching downward to the main sewer line located under the street. One of plaintiffs' own witnesses testified that if this pitch were not sufficiently acute, immediate manifestations of inadequacy would have been evident. Yet the house line functioned perfectly for about

a year after the plaintiffs had taken possession of the house, and it is difficult to reconcile the admitted performance with the assertion of a defect in pitch.

According to the agreed statement of evidence, obstructions evidently caused the first two backages of water. Mr. Levy himself testified that the original flooding was corrected "by the insertion of a snake into the sewer line, removing an obstruction." Van Drone related that he was called in 1953 and 1954 to correct water conditions in the cellar "resulting from obstructions in the sewer line." Both before and after the removal of the six-foot section of broken pipe, the system worked well for extended periods of time, and although Van Drone suggested replacement of the entire house line, there is nothing in the record warranting the legal validity of that recommendation.

The judgment of the Appellate Division is affirmed.

HEHER, J., concurring in result.

*For affirmance*—Chief Justice WEINTRAUB, and Justices HEHER, WACHENFELD, BURLING, JACOBS, FRANCIS and PROCTOR—7.

*For reversal*—None.