Bernie GRAHAM, Velma J. Graham, and Bernie Graham, III

v.

The UNITED STATES.

Civ. A. No. 4-76-300.

United States District Court,
N. D. Texas,
Fort Worth Division.

Nov. 23, 1977.

Bob Greenspan, Fort Worth, Tex., for plaintiffs.

William L. Johnson, Jr., Asst. U. S. Atty., Fort Worth, Tex., for defendant.

## MEMORANDUM OPINION

MAHON, District Judge.

Suit was brought against the United States pursuant to 28 U.S.C. § 1346(b) under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.*, by Bernie Graham, his wife Velma J. Graham, and their son Bernie Graham, III, on account of injuries sustained by the family from noxious fumes emitting from the heating unit in a home purchased by plaintiffs from the Department of Housing and Urban Development.

On October 29, 1975 the Grahams entered into a standard retail sales contract (HUD Form 9548) with the Department of Housing and Urban Development through HUD's area management broker Mr. James R. Toney, of Chandler Real Estate. The contract provided for the Grahams' purchase of a single family dwelling in Everman, Texas. The house had been built in 1971. At the time of the Grahams contracting to purchase the dwelling in 1975, Chandler Real Estate was a contractor with HUD serving as a local area management broker for HUD. The contract between HUD and Chandler Real Estate was terminated on November 30, 1975. Subsequent transaction involving the Grahams' home purchase was conducted through the local real estate broker of Bryan, Gregory & Townsend, also an area management broker for HUD. On December 20, 1975 the contract of sale between the Grahams and HUD was closed and Mr. and Mrs. Graham took title to the property. The property was delivered to the Grahams by the then area management broker, Bryan, Gregory & Townsend, on behalf of the owner and vendor HUD.

The contract of sale entered into on October 29, 1975 between HUD and Mr. Graham contained the following passages pertinent to this case:

H.  SPECIAL CONDITIONS.

The Purchaser has examined the property and will accept the property in its present condition  .   .   .

11.  (a) The Seller will correct any structural defect in the dwelling or any defect in its heating or central cooling, plumbing, and electrical systems .   .   . which occurs within one (1) year after the sale closing, provided the purchaser upon discovery of such defect promptly notifies the seller in writing  .   .   .

11.  (c) Seller agrees to bear the reasonable expense for corrections at his sole discretion. Seller's determination as to the reasonableness of the amount to be expended for, the necessity for, or the method used in performing corrections shall be final and conclusive. Seller's liability, if any, under this paragraph shall be limited solely to correction of defects for which the seller is willing to assume liability hereunder. Under no circumstances shall this paragraph 11 subject the seller for liability for injury or damage to persons or property by reason of a defect in

the dwelling, its equipment or its appurtenances . . .

In addition on December 20, 1975, the date of closing, the area management broker Bryan, Gregory and Townsend provided the Grahams with a document titled in capital letters and underlined, <u>THE FHA TWELVE MONTH STRUCTURAL AND OPERATING WARRANTY</u>. The pertinent passages of this one page document are the following:

> The contract of sale and purchase under which you have just bought the property identified above includes on the reverse a provision under which the Federal Housing Administration provides you with a limited warranty as to the physical condition of the property.

> It is the representation of the Federal Housing Administration that the dwelling is structurally safe and that the operating systems and equipment (heating, plumbing and electrical—excluding the indicated appliances) are in good operating condition. This means that, insofar as the FHA has been able to determine, ther [*sic*] are no hidden or latent defects in the structural and operating systems . . . It means, for example, that the heating and air conditioning equipment functions as expected of such an installation . . .

Following the real estate closing on December 20, 1975, the Graham family moved into the purchased residence on December 21, 1975. Before retiring for the night on December 21, Mr. Graham turned on the home heating system to warm the house through the winter night. In the early morning hours of December 22, the Grahams awoke from their sleep suffering from intense nausea, vomiting, and headaches. They were fortunate to have awoken before being lethally overcome by gaseous fumes. They were forced to go to a local hospital for treatment and to receive oxygen.

It was later determined that the gaseous fumes in the house causing the Grahams' violent illness were caused by a clogged ventilation pipe in the heating system. The evidence shows that the ventilation pipe was clogged by a bird nest, leaves, twigs, and like foreign matter. Consequently, the Grahams brought this suit against the United States alleging negligence in the inspection, repair, and maintenance of the heating unit. The plaintiffs also urge that the clause in the sales contract stating, "Under no circumstances shall this paragraph 11 subject the seller for liability for injury or damage to persons or property by reason of a defect in the dwelling, its equipment or its appurtenances . . ." is void because against public policy.

It is the legacy of the common law that in contracts for the sale of land the doctrine of caveat emptor has been applied.[1] Two exceptions to the caveat emptor doctrine have evolved. The first concerns undisclosed dangerous conditions known to the vendor.[2] The second concerns implied warranties imposed in some jurisdictions on a builder-vendor for a newly constructed house.[3] There is a third exception in the United States represented by the doctrine of redhibition that Louisiana adopted from

1. See Annot., 48 A.L.R.3d 1027 (1973); Reporter's Notes to Restatement (Second) of Torts § 352; *Humber v. Morton*, 426 S.W.2d 554 (Tex.1968).

2. Restatement (Second) of Torts § 353, Annot., 48 A.L.R.3d 1027 (1973).

3. *Humber v. Morton*, supra; Annot., 25 A.L.R.3d 383; Bearman, "Caveat Emptor in Sales of Realty—Recent Assaults Upon the Rule," 14 Vand.L.Rev. 541 (1961); Roberts, "The Case of the Unwary Home Buyer: The Housing Merchant Did It," 52 Cornell L. 2. 835 (1967); Haskell, "The Case for an Implied Warranty of Quality in Sales of Real Property," 53 Geo.L.J. 633 (1965); Ramunno, "Implied Warranty of Fitness for Habitation in Sale of Residential Dwellings," 43 Denver L.Rev. 379 (1966); Gibson and Lounsberry, "Implied Warranties—Sales of a Completed House," Comments, 1 Cal.Western L.Rev. 110 (1965); Stewart, "Implied Warranties in the Sale of New Houses," Note, 26 U.Pitt.L.Rev. 862 (1965); Smith, "Torts, Implied Warranty in Real Estate, Privity Requirement," Comment, 44 N.Car.L.Rev. 236 (1965); 7 Williston on Contracts (3rd Ed.) § 926A.

the French Civil Code.[4] Otherwise the heritage of the caveat emptor doctrine has for the most part retained its influence and application in real estate contracts. Historically the deed of conveyance in a real estate transaction has been representative of the complete agreement between the vendor and vendee, to the exclusion of additional terms or liabilities.[5]

■ Plaintiffs' negligence action has been brought against the United States under the Federal Tort Claims Act. This Act limits the liability of the United States in tort claims to the extent that a private individual would be liable according to the law of the place where the alleged negligent act or omission occurred. 28 U.S.C. § 1346(b). The issue is thus reduced to the question of what liability in the sale of real estate exists in the State of Texas for a vendor to a vendee after the vendor has transferred possession to the vendee.

The case law in Texas follows the standard of liability set out in the Restatement (Second) of Torts § 351–353. See *Beall v. Lo-Vaca Gathering Co.*, 532 S.W.2d 362 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n. r. e.); *Neuhaus v. Daniels*, 430 S.W.2d 906 (Tex.Civ.App.—Amarillo 1968, writ dism'd). The Fifth Circuit has also followed the *Restatement (Second) of Torts* in a Texas case under the Federal Tort Claims Act in determining the liability of a grantor of real property to a grantee or third party following the transfer of possession to the grantee. *United States v. Inmon*, 205 F.2d 681 (5 Cir. 1953). The applicable sections of the *Restatement (Second) of Torts* are:

§ 351. Dangerous Conditions Arising After Vendor Transfers Possession

A vendor of land is not subject to liability for physical harm caused to his vendee or others while upon the land by any dangerous condition, whether natural or artificial, which comes into existence after the vendee has taken possession.

§ 352. Dangerous Conditions Existing at Time Vendor Transfers Possession

Except as stated in § 353, a vendor of land is not subject to liability for physical harm caused to his vendee or others while upon the land after the vendee has taken possession by any dangerous condition, whether natural or artificial, which existed at the time that the vendee took possession.

§ 353. Undisclosed Dangerous Conditions Known to Vendor

(1) A vendor of land who conceals or fails to disclose to his vendee any condition, whether natural or artificial, which involves unreasonable risk to persons on the land, is subject to liability to the vendee and others upon the land with the consent of the vendee or his sub-vendee for physical harm caused by the condition after the vendee has taken possession, if

(a) the vendee does not know or have reason to know of the condition or the risk involved, and

(b) the vendor knows or has reason to know of the condition, and realizes or should realize the risk involved, and has reason to believe that the vendee will not discover the condition or realize the risk.

(2) If the vendor actively conceals the condition, the liability stated in Subsection (1) continues until the vendee discovers it and has reasonable opportunity to take effective precautions against it. Otherwise the liability continues only until the vendee has had reasonable opportunity to discover the condition and to take such precautions.

■ It is the position of plaintiffs that the United States has liability under *Restatement (Second) of Torts* § 353(1)(b) in that HUD through the area management broker "had reason to know of the condition." It is true that for a vendor to be

---

4. La.Civ.Code Ann. arts. 2520–48 (West 1952); Haskell, "The Case for an Implied Warranty of Quality in Sales of Real Property," 53 Geo.L.J. 633, 645 (1965).

5. See Restatement (Second) of Torts, Explanatory Notes § 352, Comment at 235.

liable under the tenets of § 353(1)(b), the vendor need not have actual knowledge of the condition. It is sufficient that the vendor have "reason to know." *The Restatement (Second) of Torts* defines reason to know in § 12(1). The vendor may then be liable if, ". . . he has information from which a person of reasonable intelligence, or his own superior intelligence, would infer that the condition exists, or would govern his conduct on the assumption that it does exist." *Restatement (Second) of Torts*, Explanatory Notes § 353, Comment (c) on subsection (1) at 235.

■ There is no contention by plaintiffs as to any active concealment or deception by defendant as to the defective heater. It is true that the Federal Housing Administration represented in writing to the plaintiffs that the heating system was in good operating condition, free of hidden or latent defects, and functioning properly. Under the reasoning of subsection (1) of § 353 of the Restatement, a vendor has liability when by express words the real property is represented to be safe when the vendor knows such representation to be incorrect. *United States v. Inmon*, 205 F.2d 681, 684 (5 Cir. 1953); *Restatement (Second) of Torts*, Explanatory Notes § 353, Comment (f) at 238. However, earlier in 1975 as evidenced by exhibit 3 attached to defendant's motion for summary judgment, Chandler Real Estate, the then area management broker, informed the Department of Housing and Urban Development in writing that the visual heating in the residence had been cleaned and checked for proper operation. The Government has taken the position that an area management broker contracting with HUD is an independent contractor and not an employee within the meaning of the Federal Tort Claims Act. This Court need not reach the issue of the status of vendor HUD with its area management brokers because the threshold question of the liability of the vendor to the vendee is dispositive in these circumstances and under these facts in this jurisdiction. There is no evidence or reason to conclude that the defendant Government or a private individual real estate vendor would under these facts have reason to know, or should have inferred or assumed that the condition of a ventilation pipe clogged by a bird nest, leaves, and twigs existed in the home heating system.

In the alternative even if the vendor was liable in this fact situation under the reasoning of the *Restatement (Second) of Torts*, an interpretation which this Court specifically rejects, it must be emphasized that the contract of sale, as noted earlier, specifically limited the liability of the seller to the correction of the defect, and specifically excluded "liability for injury or damage to persons or property." The plaintiffs argue that such an express contractual disclaimer and limitation of warranty is void because against public policy. As authority for this public policy position, plaintiffs cite *Crowell v. Housing Authority of Dallas*, 495 S.W.2d 887 (Tex.1973). It is true that the *Crowell* case is similar in some ways to the present fact situation. In *Crowell* the petitioner's father had died from carbon monoxide poisoning caused by a defective gas heater. Furthermore, the Supreme Court of Texas held an exculpatory contract clause denying liability for personal injury to be void because contrary to public policy. However, the contract in the *Crowell* case was a lease not a contract of sale. The opinion adopts a public policy view as relates to agreements between landlord and tenant, not as relates to the vendor and vendee relationship as is now before this Court.

■ It is true in Texas that contractual disclaimers limiting liability for personal injury in the case of the sale of consumer goods are held prima facie unconscionable. See Tex.Bus. & Comm.Code Ann. § 2.719(c) (1967); *Lankford v. Rogers Ford Sales*, 478 S.W.2d 248 (Ct.Civ.App.—El Paso 1972, writ ref'd n. r. e.). However, there is no similar rule in this state as to the sale of land. The public policy doctrines and warranties concerning the sale of chattels, now formalized somewhat by the Uniform Commercial Code, have not for the most part been extended to the sale of real property. The traditional view has been that,

There is a material difference between the relation between a manufacturer or vendor of a machine or article purchased for a specific use and one using the machine or article for the contemplated purpose, or between a landlord occupying a contractual relation with his tenant and the tenant, and the situation of one who has ceased to have any connection whatever with property which he has conveyed, or his grantee.[6] *Mercer v. Meinel,* 290 Ill. 395, 125 N.E. 288 (1919).

The justification for this view has been that in real estate transactions there would be chaos if vendors, after conveying ownership and control of the premises, could not delineate either the termination or limitation of their liability. Such a delineation need not be to the exclusion of the vendee. The vendee may negotiate warranties or guaranties from the vendor in the contract of sale. See Haskell, "The Case for an Implied Warranty of Quality in Sales of Real Property," 53 Geo.L.J. 633, 645 (1965) quoting *Levy v. C. Young Constr. Co.,* 46 N.J. Super. 293, 134 A.2d 717 (App.Div.1957), aff'd on other grounds, 26 N.J. 330, 139 A.2d 738 (1958). In the case now before this Court, the vendor did precisely delineate the limit of his liability to the vendee in the contract of sale.

In essence, though never precisely stated by plaintiffs, what plaintiffs ask this Court to rule is that there is an implied warranty of fitness in the sale of used houses in Texas and that there should be no distinction between the sale of a used house and the sale of personalty. There is no authority in Texas to justify such a ruling. Both plaintiffs and defendant direct this Court's consideration to *Humber v. Morton,* 426 S.W.2d 554 (Tex.1968). This opinion by Justice Norvell was a landmark decision that set a new precedent in this state that the caveat emptor doctrine was not applicable to the sale of a new house by a builder-vendor, and that in the sale of a new house by a builder-vendor there existed an implied warranty that the house was suitable for human habitation. The case now before this Court turns on two points. First, whether this Court extends the Texas doctrine of the implied warranty of habitability beyond builder-vendor sales of new houses to vendor sales of used houses. Secondly, if an implied warranty exists for used houses, may it be disclaimed by an exculpatory clause in the contract of sale?

This case presents serious issues and problems. The Court is sympathetic to the unfortunate and dangerous circumstances which befell the Grahams. In addition the Court is aware of the lack of true bargaining power a vendee of HUD might have in securing additional explicit warranties beyond the standard contract provisions. The Court is also impressed with certain language in *Humber, supra* at 561–562,

> Obviously, the ordinary purchaser is not in a position to ascertain when there is a defect in a chimney flue, or vent of a heating apparatus . . . It is also highly irrational to make a distinction between the liability of a vendor-builder who employs servants and one who uses independent contractors . . . The common law is not afflicted with the rigidity of the law of the Medes and the Persians "which altereth not," . . .

However, the rationale of *Humber* is addressed solely to a vendor-builder of new homes. The Supreme Court of Colorado was an early advocate that an implied warranty of quality was applicable to the sale of newly completed construction. See *Carpenter v. Donohoe,* 154 Colo. 78, 388 P.2d 399 (1964). The Colorado courts have since expressly refused to extend the doctrine to used houses.[7] See *H. B. Bolas Enterprises, Inc. v. Zarlengo,* 156 Colo. 530, 400 P.2d 447 (1965); *Gallegos v. Graff,* 32 Colo.App. 213, 508 P.2d 798 (1973); *Duncan v. Schuster-Graham Homes, Inc.,* 563 P.2d 976 (Colo. App.1977). This Court also notes that even "The Case for an Implied Warranty of

---

**6.** This early Illinois Supreme Court case denied the liability of a vendor for the death of vendee's tenant who had been killed by carbon monoxide gas from the exhaust pipe of a gas water heater.

**7.** An Indiana court has extended an implied warranty of fitness for habitation to second or subsequent purchasers, but only as against the builder-vendor.

Quality in Sales of Real Property," *supra* at 653–654, which pointedly argued for an implied warranty of merchantability in every sale of used construction, also admitted that such an implied warranty for used construction could be specifically contractually disclaimed. In this case the Government specifically disclaimed liability for personal injury in the written contract of sale entered into on October 29, 1975. In addition on the date of closing, December 20, 1975, the vendor-Government provided the plaintiff-vendees with a document (set out previously) which called attention to the contract of sale's limited warranty.

This Court holds that there is no implied warranty in Texas for the sale of used homes and that the doctrine of caveat emptor is applicable to this fact situation of the vendor-vendee transfer of a used home. In addition the Court finds that the Government-vendor specifically contractually disclaimed liability for personal injury. The Court further finds that in this fact situation the defendant Government as vendor had no knowledge or reason to know of the defect of the clogged vent in the heating system. The Court holds there was no liability on the part of the defendant vendor. The Court enters a take nothing judgment for plaintiff.