**HYDRO–MANUFACTURING, INC.**

v.

**KAYSER–ROTH CORP.**

No. 93–96–Appeal.

Supreme Court of Rhode Island.

April 19, 1994.

Haig Barsamian, William Grande, Providence, for plaintiff.

Deming Sherman, Stephen Prignano, Edwards & Angell, Providence, for defendant.

## OPINION

LEDERBERG, Justice.

The plaintiff, Hydro–Manufacturing, Inc. (Hydro), appealed to the Supreme Court from an order that granted summary judgment to the defendant, Kayser–Roth Corp. (Kayser–Roth). Hydro had purchased a textile-manufacturing facility located in North Smithfield, Rhode Island (the site). Approximately twelve years before Hydro purchased this facility, the site was contaminated with trichloroethylene (TCE). The property at that time was owned by Stamina Mills, Inc. (Stamina), then a subsidiary of a corporation whose successor is Kayser–Roth. Hydro attempted to recover damages it incurred in the aftermath of the site's contamination by asserting several causes of action against its predecessor-in-interest, Kayser–Roth. For the reasons herein stated, we hold that, under Rhode Island law, Hydro may not maintain a claim against Kayser–Roth. Rather, in this case, the issues of liability, transfer or release from financial responsibility, and actions for allocation, contribution, and recovery of costs for removal or remedial actions, generally, are actionable under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C.A. §§ 9601–9675 (West 1983 & Supp. 1993). The facts pertinent to this appeal follow.

## FACTS AND PROCEDURAL HISTORY

Since the 1800s a mill building has existed at the site, located north of the Branch River in North Smithfield. Stamina owned and operated a textile-manufacturing facility at the site from 1952 until 1975. In its operations Stamina initially utilized a soap-scouring system to remove dirt and oil from newly woven fabric, but in March 1969, in order to mitigate pollution to the Branch River allegedly caused by the soap-scouring system, Stamina replaced that process with one using TCE. The TCE, however, proved to be no less a contaminant than the soap. Shortly after Stamina began using TCE in 1969, an

indeterminate amount of the chemical was accidentally released into the ground when a tanker driver improperly attached a hose coupling to the TCE storage tank on the property.

In 1979 the Rhode Island Department of Health began to investigate contamination in residential wells located north and northwest of the site, and in 1980, the Rhode Island Department of Environmental Management (DEM) issued a report that concluded that the residential wells had been contaminated with TCE that had originated from the site.

The United States Environmental Protection Agency (EPA) conducted a hydrogeological study of the area and, in September 1982, also concluded that the site was the source of the contamination of the well water. The EPA initiated remedial measures at both the site and the residential, off-site wells.

Between the TCE spill in 1969 and the EPA's study in 1982, the site had twice changed ownership. Stamina, after ending operations at the site in 1975, sold the land in 1976 to Roger Meunier, and in 1977, dissolved its corporate existence. In 1981 Roger Meunier deeded the property to Hydro.

Subsequently, to recover cleanup costs it had incurred, the United States brought suit against Hydro, the current owner of the site, and against Kayser–Roth, the "owner" and "operator" of the site at the time the contamination occurred. *United States v. Kayser–Roth Corp.*, 724 F.Supp. 15, 23–24 (D.R.I. 1989), *aff'd*, 910 F.2d 24 (1st Cir.1990), *cert. denied*, 498 U.S. 1084, 111 S.Ct. 957, 112 L.Ed.2d 1045 (1991).

Suit was commenced under CERCLA pursuant to 42 U.S.C.A. § 9607(a) (West Supp. 1993), which provides in pertinent part:

"(1) the owner and operator of * * * a facility [and]

"(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

* * * * * *

"(4) * * * shall be liable for—

(A) all costs of removal or remedial action incurred by the United States Gov-ernment or a State or an Indian tribe not inconsistent with the national contingency plan." Hydro, prior to trial, entered into a consent agreement in which, in exchange for release from any further liability, it agreed to transfer title of the site to the government, and to pay property taxes during the cleanup, following which Hydro would assume the expense of procuring a buyer for the site.

Kayser–Roth, having stipulated that TCE is a hazardous material under CERCLA and that a TCE spill had occurred at the site in 1969, nevertheless maintained that it was not liable to the government for the actions of Stamina, and that even if it were liable, the contamination of the wells was not the result of the 1969 spill. Kayser–Roth, however, was classified as "owner" and "operator" of the site for CERCLA purposes within the provisions of § 9607(a) in *Kayser–Roth Corp.*, 724 F.Supp. at 23–24, where the court found "ample evidence to support the fact that once dumped on Stamina Mills' property the TCE migrated to the Forestdale wells." *Id.* at 24. Accordingly, Kayser–Roth was held liable for cleanup costs amounting to $846,492.33 (plus interest) in addition to future response costs for the cleanup both on site and off site. *Id.* at 24–25.

Within two years of the adverse decision in federal court, Kayser–Roth was again defending a suit stemming from the contamination at the site. Hydro, in March 1991, filed the instant action against Kayser–Roth in Rhode Island Superior Court, seeking, *inter alia*, indemnification for the damages it suffered as a result of the CERCLA suit. More precisely, Hydro contended that as an innocent purchaser, it was entitled to recover from Kayser–Roth—the party responsible for the damage—the value of the land forfeited to the United States, as well as the costs incurred in defending the CERCLA suit. Initially Hydro's complaint consisted of one count sounding in negligence. Hydro subsequently filed an amended complaint advancing six additional theories of recovery including private and public nuisance, abnormally dangerous activity, failure to disclose, and two claims under G.L.1956 (1991 Reenactment) § 46–12–21, a statute on liability for

pollution of groundwater. Kayser–Roth moved for summary judgment on all seven counts, arguing that no genuine issues of material fact existed and that Kayser–Roth was entitled to judgment as a matter of law. The trial justice found that there were no genuine issues in regard to material facts and, relying primarily on *Wilson Auto Enterprises, Inc. v. Mobil Oil Corp.*, 778 F.Supp. 101 (D.R.I.1991), held that Kayser–Roth was entitled to judgment as a matter of law. Hydro filed a timely appeal from the summary-judgment order pursuant to G.L.1956 (1985 Reenactment) § 9–24–1.

■■■ This court reviews the propriety of a summary-judgment order according to the same standards that the trial justice applies in deciding whether to grant a party's motion. *McPhillips v. Zayre Corp.*, 582 A.2d 747, 749 (R.I.1990). Under Rule 56 of the Superior Court Rules of Civil Procedure, a trial justice may grant summary judgment in favor of a moving party if the justice has determined that there are no genuine issues as to material facts. *Palmisciano v. Burrillville Racing Association*, 603 A.2d 317, 320 (R.I.1992). As a remedy, summary judgment is extreme and must be applied cautiously. *Golderese v. Suburban Land Co.*, 590 A.2d 395, 397 (R.I.1991). The trial justice looks to "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," submitted by the parties. Rule 56(c). A party that opposes a motion for summary judgment, however, cannot rely solely on mere allegations or on the denials contained in the pleadings to defeat the motion. *Ludwig v. Kowal*, 419 A.2d 297, 301 (R.I.1980). Rather, the nonmoving party must affirmatively assert facts that raise a genuine issue to be resolved. *Volino v. General Dynamics*, 539 A.2d 531, 533 (R.I.1988); *Ludwig*, 419 A.2d at 301. If the trial justice has determined that there is no genuine issue of material fact, then the justice must consider whether the moving party is entitled to judgment as a matter of law. *Alfano v. Landers*, 585 A.2d 651, 652 (R.I.1991).

On appeal Hydro maintained that in relying on *Wilson Auto Enterprises* to grant judgment in favor of Kayser–Roth, the trial justice erred. According to Hydro, there were genuine issues of material fact that foreclosed summary judgment. Our review of the record, however, discloses that none of Hydro's claims raises a genuine issue of material fact. Thus, we look to the various theories set forth in Hydro's amended complaint to determine whether Kayser–Roth is entitled to judgment as a matter of law.

## SECTION 46–12–21

In two of the seven counts in its amended complaint, Hydro relied on G.L.1956 (1991 Reenactment) § 46–12–21 to support its contention that Kayser–Roth was liable for intentionally and negligently polluting the site and groundwater.

Section 46–12–21 provides:

"Any person who shall negligently or intentionally pollute groundwater shall be liable to any other person who is damaged by that pollution."

This provision, however, was enacted in 1980, *see* P.L.1980, ch. 239, § 3,[1] four years after Kayser–Roth's subsidiary sold the property and eleven years after the TCE spill that had caused the groundwater pollution. Hydro contended that the retroactive application of § 46–12–21 permitted Hydro to pursue recovery under the statute. Hydro averred that whether a statute should be applied retrospectively or prospectively rests on the determination of legislative intent. Hydro argued that because increased public support for safeguarding the environment has resulted in national and state policies to abate pollution, the retroactive application of § 46–12–21 would be justified to effectively carry out its legislative intent.

■■■ It is well established, however, that statutes and their amendments are presumed to apply prospectively. *Lawrence v. Anheuser–Busch, Inc.*, 523 A.2d 864, 869 (R.I.1987). Only when "it appears by clear, strong language or by necessary implication that the

---

1. The Legislature originally codified this provision at G.L.1956 (1980 Reenactment) § 46–12–30, as amended by P.L.1980, ch. 239, § 3. Subse-quently, this provision was recodified at § 46–12–21. P.L.1983, ch. 149, § 1. The substance of the statute, however, has remained the same.

Legislature intended" a statute to have retroactive application will the courts apply it retrospectively. *VanMarter v. Royal Indemnity Co.*, 556 A.2d 41, 44 (R.I.1989). With respect to § 46–12–21, we find neither statutory language nor legislative intent to apply the statute retroactively. On the contrary, the Legislature expressly stated that the law "shall take effect upon passage." P.L.1980, ch. 239, § 4. *See VanMarter*, 556 A.2d at 44. Therefore, absent any evidence to support the retroactive application of § 46–12–21, the statute must be applied prospectively. Consequently, Hydro's contention that Kayser–Roth is liable pursuant to § 46–12–21 [2] must fail.

## NEGLIGENCE

In addition to its statutory claim, Hydro has also relied on tort and equitable theories to support its claim for damages against Kayser–Roth. Hydro asserted that Kayser–Roth's negligent activities at the site resulted in contamination of the land. Hydro argued that Kayser–Roth should be held liable for its negligent acts—acts that forced Hydro to incur expenses in defense of a CERCLA suit and eventually to forfeit the site in satisfaction of CERCLA cleanup costs. In granting Kayser–Roth's motion for summary judgment, the trial justice rejected the allegation that a prior owner owed a duty to subsequent and/or remote purchasers and found that the doctrine of caveat emptor controlled the parties' relationship. We agree.

▮ Only when an individual owes a duty to another and has breached that duty can that individual be held liable for negligence. *Rodrigues v. Miriam Hospital*, 623 A.2d 456, 460 (R.I.1993); *Paquin v. Tillinghast*, 517 A.2d 246, 248 (R.I.1986); *Welsh Manufacturing, Division of Textron, Inc. v. Pinkerton's, Inc.*, 474 A.2d 436, 440 (R.I. 1984). The existence—or nonexistence—of a duty is prerequisite to a finding of liability in tort law. *Swajian v. General Motors Corp.*,

559 A.2d 1041, 1046 (R.I.1989). Without breach of a duty, no liability can be imposed. *Paquin*, 517 A.2d at 248. Thus, critical to every negligence action is the identification of a duty running from the defendant to the plaintiff. *Rodrigues*, 623 A.2d at 460; *Welsh Manufacturing*, 474 A.2d at 440. Whether such a duty exists is a question of law for the court. *Banks v. Bowen's Landing Corp.*, 522 A.2d 1222, 1224 (R.I.1987); *Barratt v. Burlingham*, 492 A.2d 1219, 1222 (R.I.1985).

▮ Hydro, in the instant action, essentially argued that prior owners of property owe remote purchasers a duty to maintain the property and to refrain from any activity that may harm the property. The common law, however, does not support the imposition of such a duty. *Wilson Auto Enterprises, Inc.*, 778 F.Supp. at 104; *Wellesley Hills Realty Trust v. Mobil Oil Corp.*, 747 F.Supp. 93, 100 (D.Mass.1990). We are of the opinion that any extension of the common law that would impose such a duty is unwarranted in the instant case. We therefore decline to create such a common-law remedy where none exists.

▮ In reaching this conclusion, we note that the duty that sellers owe to subsequent purchasers is established primarily through contracts between the parties who theoretically reach an arms-length agreement on a sale price that reflects the true value of land. *Philadelphia Electric Co. v. Hercules, Inc.*, 762 F.2d 303, 312 (3d Cir.), *cert. denied*, 474 U.S. 980, 106 S.Ct. 384, 88 L.Ed.2d 337 (1985); *Wilson Auto Enterprises, Inc.*, 778 F.Supp. at 105. A buyer has the option to inspect the property and inquire into possible defects prior to purchase. A seller who does not answer truthfully is liable in an action for misrepresentation. A buyer concerned with the truthfulness of the seller's answer or of possible future liability resulting from a prior owner's actions can seek a reduction in the sale price, seek indemnity from the seller (through a warran-

---

**2.** We note that the "progressive" industrial-age law in effect at the time of the TCE spill was an environmentally insensitive statute, G.L.1956 § 46–12–30. Repealed in 1980 and replaced by the current liability provision, *see* P.L.1980, ch. 239, §§ 2–3, the former statute mandated that

"[n]o person shall be held to have violated [chapter 12 of title 46] where the sole damage caused by him is the rendering unsuitable for drinking purposes * * * the waters polluted by him." G.L.1956 § 46–12–30.

ty), or walk away from the sale. A buyer, then, under an affirmative duty to inspect the land and make reasonable inquiry, can negotiate a selling price that reflects the land's actual, economic value. 778 F.Supp. at 104–05. Under the doctrine of caveat emptor, which has long dominated real estate transactions in Rhode Island,[3] *id.,* the liability of the seller can thus be limited by the terms expressed in the agreement between the parties, *Philadelphia Electric Co.,* 762 F.2d at 312. Buyers of contaminated land, unlike the victims of negligent acts, are in a position to protect themselves through contract or by refusing to conclude a transaction. For example, in the instant case, Hydro alleged in its complaint that the DEM issued a report on February 1, 1980, connecting the pollution of the residential wells to the TCE spill that had occurred at the site. Hydro also admitted in its complaint that it purchased the site in 1981. Thus at the time Hydro negotiated the purchase agreement, an official association had been recognized between the pollution of the wells and the site. No evidence exists, however, to show that Hydro made an inquiry that could have led to a reduction of purchase price and/or warranties that could have better allocated liabilities. Although agreements to indemnify or hold harmless are unenforceable against the government, CERCLA expressly preserves the right of private parties to contractually transfer to or release another from financial responsibility stemming from CERCLA liability. 42 U.S.C.A. § 9607(e)(1) (West 1983); *Smith Land & Improvement Corp. v. Celotex Corp.,* 851 F.2d 86, 89 (3d Cir.1988), *cert. denied,* 488 U.S. 1029, 109 S.Ct. 837, 102 L.Ed.2d 969 (1989); *Southland Corp. v. Ashland Oil, Inc.,* 696 F.Supp. 994, 1000 (D.N.J.1988).

Finally we note that extension of the common law is unwarranted in light of recent state and federal statutory laws that impose liability running from landowners to subsequent remote purchasers. In Rhode Island, § 46–12–21 does not apply in the instant case because it cannot be applied retroactively.

*See supra.* The statute nevertheless imposes a liability running from landowners to future purchasers and anyone else who is harmed by pollution that affects groundwater.

The federal counterpart to § 46–12–21 is CERCLA. Enacted in 1980, and substantially amended in 1986, Superfund Amendments and Reauthorization Act of 1986, Pub.L. No. 99–499, 100 Stat. 1613 (1986), with jurisdiction vested exclusively in the federal court, 42 U.S.C.A. § 9613(b) (West Supp.1993), CERCLA provides for a remedy to the widespread use and disposal of hazardous substances by ensuring a prompt and an effective cleanup of hazardous-waste disposal sites. *Mardan Corp. v. C.G.C. Music, Ltd.,* 804 F.2d 1454, 1455 (9th Cir.1986). In addition, CERCLA assures that parties responsible for pollution bear the cost of rectifying the conditions they created. *Id.* This objective is accomplished in part because CERCLA can be applied retroactively. *United States v. Northeastern Pharmaceutical & Chemical Co.,* 810 F.2d 726, 732–34 (8th Cir. 1986), *cert. denied,* 484 U.S. 848, 108 S.Ct. 146, 98 L.Ed.2d 102 (1987). Thus subsequent purchasers may seek contribution or indemnification from a "responsible party" even if the offensive actions occurred prior to CERCLA's enactment in 1980.

There are two provisions in CERCLA by which a private individual may seek recovery. Pursuant to 42 U.S.C.A. § 9607(a)(4)(B) private entities may sue "responsible parties" for "any other necessary costs of response incurred by any other person consistent with the national contingency plan." Although "responsible parties" are not specifically permitted to seek recovery under § 9607(a)(4)(B), some courts have found that potentially responsible parties do have standing to pursue private actions. *Pinole Point Properties, Inc. v. Bethlehem Steel Corp.,* 596 F.Supp. 283, 290–91 (N.D.Cal.1984); *City of Philadelphia v. Stepan Chemical Co.,* 544 F.Supp. 1135, 1142–43 (E.D.P.A.1982). These courts have permitted such actions as a means of furthering the key objective of

---

**3.** Certain exceptions to the doctrine of caveat emptor have developed based on equitable principles. *See, e.g., Graham v. United States,* 441 F.Supp. 741, 743 (N.D.Tex.1977) (duty to disclose dangerous conditions known to vendor);

*Padula v. J.J. Deb–Cin Homes, Inc.,* 111 R.I. 29, 32, 298 A.2d 529, 531 (1973) ("where a builder-vendor sells a house * * * he implicitly warrants * * * the dwelling will be reasonably fit for human habitation").

CERCLA—"to facilitate the prompt clean up of hazardous dumpsites * * * by placing the ultimate financial burden upon those responsible for the danger." *Stepan Chemical Co.*, 544 F.Supp. at 1142–43.

In addition, although liability under CERCLA generally is joint and several, Jeffrey M. Gaba, *Recovering Hazardous Waste Cleanup Costs: The Private Cause of Action Under CERCLA*, 13 Ecology L.Q. 181, 189 & n. 28 (1986), § 9613(f)(1) provides an express right to contribution from "any other person who is liable or potentially liable under section 9607(a)." 42 U.S.C.A. § 9613(f)(1) (West Supp.1993). Contribution may be sought through a separate cause of action in federal court or, if the party is being sued under CERCLA, through impleading other potentially responsible parties and filing cross- or counterclaims. *Id.*

Therefore, in the instant action CERCLA provided Hydro with a potential cause of action against Kayser–Roth.[4] Given these factors, we are of the opinion that extending common-law negligence doctrine to create a duty running from a predecessor-in-interest to a remote subsequent purchaser is unwarranted.

## PRIVATE AND PUBLIC NUISANCE

In its amended complaint Hydro asserted that Kayser–Roth's actions gave rise to a cause of action sounding in nuisance. Relying primarily on *Wood v. Picillo*, 443 A.2d 1244 (R.I.1982), Hydro contended that contamination of the site by Kayser–Roth's subsidiary created both a private and a public nuisance for which it must be held liable.

Private and public nuisances are two distinct causes of action relating to the unreasonable interference with the use and enjoyment of land. Historically the law of private nuisance has been applied to conflicts between neighboring, contemporaneous land uses. *Philadelphia Electric Co.*, 762 F.2d at 314 & n. 9; *Wellesley Hills Realty Trust*, 747 F.Supp. at 98. Under Rhode Island law it is well settled that a cause of action for a private nuisance "arises from the unreasonable use of one's property that materially interferes with a *neighbor's* physical comfort or the *neighbor's* use of his real estate." (Emphasis added.) *Weida v. Ferry*, 493 A.2d 824, 826 (R.I.1985). *Accord Citizens for Preservation of Waterman Lake v. Davis*, 420 A.2d 53, 59 (R.I.1980). The offensive condition therefore must originate outside the plaintiff's land, *Wilson Auto Enterprises, Inc.*, 778 F.Supp. at 106; *Wellesley Hills Realty Trust*, 747 F.Supp. at 98, in contrast to the instant action, in which Hydro seeks recovery for conditions originating from *its own* property. Hydro, the vendee of property whose conditions vendor Kayser–Roth allegedly created, claimed that the contamination has interfered with its use of that property. Under common law, a current owner cannot assert a private-nuisance claim against a prior owner for contamination that occurred before the sale. *Philadelphia Electric Co.*, 762 F.2d at 314–15; *Wilson Auto Enterprises, Inc.*, 778 F.Supp. at 106; *Wellesley Hills Realty Trust*, 747 F.Supp. at 98–99; *Amland Properties Corp. v. Aluminum Company of America*, 711 F.Supp. 784, 808 & n. 24 (D.N.J.1989); *Sheehy v. Lipton Industries, Inc.*, 24 Mass.App.Ct. 188, 191–92, 507 N.E.2d 781, 783 (1987). Accordingly, Hydro is precluded from pursuing a private-nuisance action against its predecessor-in-interest, Kayser–Roth.

Unlike a private nuisance where there is an invasion of another's interest in the private use and enjoyment of land, a public nuisance is an "unreasonable interference with a right common to the general public." *Citizens for Preservation of Waterman Lake*, 420 A.2d at 59. Not everyone affected by a public nuisance, however, has standing to pursue an action to recover damages created by the nuisance. Only private individuals who " 'suffer[ ] special damage, distinct from that common to the public' " may maintain an action for a public nuisance.

---

4. The doctrine of caveat emptor is not a permissible defense to liability under CERCLA. *Smith Land & Improvement Corp. v. Celotex Corp.*, 851 F.2d 86, 89–90 (3d Cir.1988), *cert. denied*, 488 U.S. 1029, 109 S.Ct. 837, 102 L.Ed.2d 969 (1989). However, a court may use equitable factors, such as caveat emptor, in determining the amount of the award in a CERCLA suit. 851 F.2d at 89; 42 U.S.C.A. § 9613(f)(1) (West Supp. 1993).

*Iafrate v. Ramsden,* 96 R.I. 216, 222, 190 A.2d 473, 476 (1963). *Accord Radigan v. W.J. Halloran Co.,* 97 R.I. 122, 128, 196 A.2d 160, 163 (1963). To meet the "special damage" requirement, the individual "must have suffered harm of a kind different from that suffered by other members of the public *exercising the right common to the general public that was the subject of interference.*" (Emphasis added.) 4 Restatement (Second) *Torts* § 821C(1) (1979).

The "special damage" that Hydro is alleged to have suffered is the loss of the use and/or value of the land forfeited in settlement of the CERCLA action. Hydro, however, has not suffered this "special damage" in the exercise of a right common to the general public. The public right that has been interfered with by the contamination of the land is the right to pure water. Hydro did not allege that it suffered special damages stemming from Kayser–Roth's interference with Hydro's use and enjoyment of the groundwater at the site or of its right to pure water. *See Mayor and Council of Rockaway v. Klockner & Klockner,* 811 F.Supp. 1039, 1056–57 (D.N.J.1993). Hydro, rather, maintained that it suffered pecuniary harm in the forfeiture of the land. The CERCLA action that resulted in forfeiture of the land was brought against Hydro because of Hydro's status as current owner of the contaminated land. Therefore, the alleged damages suffered by Hydro were in Hydro's exercise of its private-property right, not in the exercise of a public right. *See Philadelphia Electric Co.,* 762 F.2d at 316. Thus, because Hydro's harm was not suffered in the exercise of a right common to the general public, Hydro lacks standing to pursue a public-nuisance action.

## ABNORMALLY DANGEROUS ACTIVITIES AND FAILURE TO DISCLOSE

In two other counts, Hydro alleged that Kayser–Roth should be liable for having conducted an abnormally dangerous activity and for having failed to disclose dangerous conditions at the site. We are of the opinion that Hydro has failed to establish a cause of action under either of these counts.

First, in regard to maintaining an abnormally dangerous activity, if we assume *arguendo* that Rhode Island recognizes such a cause of action [5] and that Kayser–Roth's activity amounted to an abnormally dangerous one, Hydro has failed to state a claim for strict liability. The Restatement (Second) of Torts provides that "[o]ne who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels *of another* resulting from the activity." (Emphasis added.) 3 Restatement (Second) *Torts* § 519 (1977). At the time Stamina committed the offensive activity, Stamina owned the property. Thus, Stamina caused harm to property *it owned.* After the contamination, the site became the property of Hydro. Hydro therefore did not bring this claim as an injured adjoining landowner or visitor on Kayser–Roth's property. Thus Hydro has failed to state a cause of action for the maintenance of an abnormally dangerous activity. *Wellesley Hills Realty Trust,* 747 F.Supp. at 102. *Accord Futura Realty v. Lone Star Building Centers (Eastern), Inc.,* 578 So.2d 363, 365 (Fla.Dist.Ct.App.1991).

Hydro has also failed to state a cause of action as a consequence of failure to disclose a dangerous condition of the land. As we noted *supra,* a recognized exception to the doctrine of caveat emptor is the duty imposed on a vendor to disclose to a vendee any hidden defects it knows or should know would create an unreasonable risk of harm to others. *See* G.L.1956 (1987 Reenactment) § 5–20.8–2, as amended by P.L.1993, ch. 397, § 4. But, this exception to the doctrine of caveat emptor does not apply here.

---

5. This court has declined to adopt the rule of strict liability for abnormally dangerous activity enunciated in *Rylands v. Fletcher,* [1868] L.R. 3 E & I App. 330. *Rose v. Socony–Vacuum Corp.,* 54 R.I. 411, 416, 173 A. 627, 629 (1934). Without expressly overruling *Socony–Vacuum* on this issue, however, we subsequently noted that an individual may arguably be held strictly liable for maintaining an abnormally dangerous activity. *Wood v. Picillo,* 443 A.2d 1244, 1249 n. 7 (R.I. 1982). Nevertheless, we did not expressly adopt the doctrine of abnormally dangerous activity in *Wood,* and in like manner, we are of the opinion that the instant case does not warrant the adoption of the doctrine at this time.

Stamina, Kayser–Roth's subsidiary, sold the property to Meunier. Thus, if one assumes that there is a dangerous condition creating an unreasonable risk of harm that Stamina had a duty to disclose, then that duty would run to Meunier, not to Hydro. Hydro nevertheless asks this court to extend the doctrine to create a duty running from vendors to subsequent remote vendees. We decline to expand the common law to accommodate Hydro's claim here, noting that a potential cause of action may be brought in federal court under CERCLA.

■ Hydro's final claim on appeal was that Kayser–Roth would be unjustly enriched if Hydro were prevented from seeking damages in the instant suit. Our review of the record, however, revealed that Hydro did not advance a theory of unjust enrichment in the Superior Court proceedings. It is well settled that a party may not "'advance new theories or raise new issues in order to secure a reversal of the lower court's determination.'" *Nedder v. Rhode Island Hospital Trust National Bank*, 459 A.2d 960, 963 (R.I. 1983) (quoting *Ludwig v. Kowal*, 419 A.2d 297, 302 (R.I.1980)). Thus, because this argument was raised for the first time on appeal, we decline to consider it. *Nedder*, 459 A.2d at 963.

Accordingly, for the foregoing reasons we deny and dismiss the appeal. The judgment appeal from is affirmed.