BOSTON INVESTMENT PROPERTY
# 1 STATE, a Massachusetts
Limited Partnership

v.

E.W. BURMAN, INC.

No. 94–186–M.P.

Supreme Court of Rhode Island.

May 26, 1995.

Anthony F. Cottone, Robert Corrente, Albert DiFiore, Providence, for plaintiff.

Michael Sarli, Linn Foster Freedman, Providence, for defendant.

## OPINION

SHEA, Justice.

The matter before the court is a certified question from the United States District Court for the District of Rhode Island. The question certified to this court is as follows:

> "In the absence of privity of contract with the general contractor, is the subsequent purchaser of a commercial office building in Rhode Island entitled to recover economic damages which it is alleged were proximately caused by the negligence of the general contractor?"

For the reasons that follow, we answer this question in the negative.

The facts and procedural history pertinent to this matter are as follows. Between 1982 and 1984, defendant in the underlying cause of action, E.W. Burman, Inc., (Burman), constructed a building known as One State Street. One State Street is a six-story, commercial office building of approximately 36,-000 square feet located in Providence and commonly referred to as the Wang Building. Burman was the general contractor and supervised construction of One State Street in accordance with its contract with the owner of the project, Capitol Hill Development, a general partnership.

On November 8, 1985, plaintiff, Boston Investment Property # 1 State, a Massachusetts Limited Partnership (Boston Investment), purchased One State Street from Capitol Hill Development for $3.6 million pursuant to a written purchase-and-sale agreement. The subject property was purchased with no express warranties concerning its condition. Shortly following the sale, Boston Investment alleged that it learned that the windows of One State Street leaked when it rained and that erosion problems were present with the parking lot. The plaintiff subsequently filed suit in the United States District Court for the District of Rhode Island against the seller, Capitol Hill Investment, alleging breach of contract and breach of express and implied warranties.

In response to the suit by Boston Investment, Capitol Hill Development filed a third-party complaint against Burman, alleging that the defects were due to Burman's "negligent, unworkmanlike construction, failure to comply with plans and specifications, [and] failure to comply with laws, ordinances and building codes regarding proper construction." Boston Investment then amended its complaint to add a negligence claim directly against Burman, seeking damages for the costs to remedy the defects and the additional depreciation in the value of the building. Following the granting of the motion to amend, Burman moved to certify the question presented to this court, and pursuant to Rule 6 of the Supreme Court Rules of Appellate Procedure, the United States District Court for the District of Rhode Island complied.

Boston Investment asserts that "equity, public policy and existing Rhode Island law mandate that this court should afford innocent purchasers like Boston Investment the chance to recover economic losses stemming from the negligence of construction professionals like Burman." To support its position, plaintiff places much reliance on this court's holding in *Forte Brothers, Inc. v. National Amusements, Inc.*, 525 A.2d 1301 (R.I.1987) (hereinafter *Forte Bros.*).

The issue presented in *Forte Bros.* was whether a third-party general contractor who may foreseeably be injured or suffer an economic loss proximately caused by the negligent performance of a contractual duty by an architect/site engineer has a cause of action in negligence against the architect/site engineer notwithstanding an absence of privity. *Id.* at 1302. In *Forte Bros.*, the property owner, National Amusements, Inc. (National), contracted with Forte Brothers (Forte) to perform excavation and grading work at a site for National Amusements' Showcase Cinema in Warwick. *Id.* National contracted with Allen & Demurjian (Allen) to provide supervising architect/site engineer services for the project. *Id.* It was Allen's duty to measure Forte's removal of rock and boulders from the site, and to approve payments to Forte for that excavation. *Id.* Forte subsequently claimed that Allen negligently failed in its supervisory duties, and as a result National refused to pay for the excavation. *Forte Bros.*, 525 A.2d at 1302.

We held that Forte could maintain a negligence cause of action against Allen notwithstanding an absence of privity. *Id.* at 1303. A supervising architect owes a duty of care to contractors who share an economic relationship and community of interest with the architect on a construction project. "The duty is based on circumstances establishing a direct and reasonable reliance by the contractor on the contractual performance of the architect when the architect knows, or should know, of that reliance." *Id.* We reasoned that "[a]ltogether too much control over the contractor necessarily rests in the hands of the supervising architect for him not to be placed under a duty imposed by law to perform without negligence his functions as they affect the contractor." *Id.* (quoting *United States v. Rogers & Rogers*, 161 F.Supp. 132, 136 (S.D. Cal.1958)). In these circumstances, we stated, "[t]o deny this plaintiff its day in court would, in effect, be to condone a supervising architect/site engineer's right to do its job negligently and with impunity as far as innocent third parties who suffer economic loss are concerned." *Forte Bros.*, 525 A.2d at 1303.

In reliance on our holding in *Forte Bros.*, plaintiff contends that since Boston Investment was the first purchaser from Capitol Hill Development and took title less than one year from the date the building was accepted by Capitol Hill Development, Boston Investment was part of an identifiable class with respect to whom Burman knew or had reason to know would suffer an economic loss from building defects that were due to its negligent construction.

Our holding in *Forte Bros.* did indeed allow a plaintiff to maintain a tort claim of negligence for purely economic loss in the absence of privity. However, *Forte Bros.* is readily distinguishable from the case at bar. In *Forte Bros.*, the plaintiff contractor and the defendant architect were collaborators on the same project, with each dependent on the other to complete the project. They were aware of each other's presence, and each had an interrelated contract with the property

owner. Because Forte's payments for the excavation were directly dependent on Allen's supervision and certification, the foreseeability of harm to Forte was high if Allen failed to perform its job.

In the case at bar, plaintiff, as a future buyer, was neither known to nor identifiable to defendant contractor. Their individual relationships with the original owner were wholly independent of each other. There was no foreseeable harm to a subsequent owner based on alleged negligence on the part of the builder, particularly because the original owner might well have corrected any problems or absorbed any losses long before any sale.

The defendant cites *Hart Engineering Co. v. FMC Corp.*, 593 F.Supp. 1471 (D.R.I.1984), to support the proposition that this court should adopt the "economic loss" doctrine whereby a plaintiff is precluded from recovering purely economic losses in a negligence cause of action. *See, e.g., Jones & Laughlin Steel Corp. v. Johns–Manville Sales Corp.*, 626 F.2d 280, 286–89 (3d Cir.1980); *Argo Welded Products, Inc. v. J.T. Ryerson Steel & Sons, Inc.*, 528 F.Supp. 583, 586 (E.D.Pa. 1981). In *Hart Engineering Co.* the United States District Court for the District of Rhode Island held that a seller-manufacturer of defective equipment was not liable as a tort-feasor for an innocent buyer's economic losses. 593 F.Supp. at 1485. The court stated that in the context of product-liability actions, particularly when contracting parties are of comparable economic strength and deal at arm's length in an exclusively commercial setting, the remedy for economic loss relating to a purchaser's disappointed expectations due to deterioration or internal breakdown lies in contract. *Id.* at 1484.

More recently the Supreme Court of Washington held "that when parties have contracted to protect against potential economic liability, as is the case in the construction industry, contract principles override * * * tort principles * * * and, thus, purely economic damages are not recoverable." *Berschauer/Phillips Construction Co. v. Seattle School District*, 124 Wash.2d 816, 828, 881 P.2d 986, 993 (1994). The Supreme Court of Washington stated that if tort and contract remedies were allowed to overlap, particularly in the construction industry, "certainty and predictability in allocating risk would decrease and impede future business activity." *Id.* at 826, 881 P.2d at 992. We agree.

We feel that this court's reasoning in *Hydro–Manufacturing, Inc. v. Kayser–Roth Corp.*, 640 A.2d 950 (R.I.1994), provides guidance to our answer of the question presented before us. Although not a case addressing the economic-loss doctrine, *Hydro–Manufacturing* provides a framework for risk allocation in commercial real estate transactions in Rhode Island. In *Hydro–Manufacturing* we emphasized "that the duty that sellers owe to subsequent purchasers is established primarily through contracts between the parties who theoretically reach an arms-length agreement on a sale price that reflects the true value of land." *Hydro–Manufacturing, Inc.*, 640 A.2d at 955. A sophisticated buyer has the option to inspect property and inquire into possible defects prior to purchase. *Id.* In addition a buyer can negotiate a selling price that reflects the property's fair market value. *Id.* at 956.

It is important to note that the parties involved in the matter before us are commercial entities. This is not a situation in which there is a discrepancy in the bargaining powers of the parties. We acknowledge that exceptions to the caveat emptor doctrine have developed based on equitable principles. *See Padula v. J.J. Deb–Cin Homes, Inc.*, 111 R.I. 29, 32, 298 A.2d 529, 531 (1973) (when a builder vendor sells a house he or she implicitly warrants the dwelling will be reasonably fit for human habitation). However, we feel that it is appropriate for sophisticated commercial entities to utilize contract law to protect themselves from economic damages.

In *Spring Motors Distributors, Inc. v. Ford Motor Co.*, 98 N.J. 555, 579–80, 489 A.2d 660, 672 (1985), the Supreme Court of New Jersey held that

"[t]he purpose of a tort duty of care is to protect society's interest in freedom from harm, i.e., the duty arises from policy considerations formed without reference to any agreement between the parties. A contractual duty, by comparison, arises

from society's interest in the performance of promises. Generally speaking, tort principles, such as negligence, are better suited for resolving claims involving unanticipated physical injury, particularly those arising out of an accident. *Contract principles, on the other hand, are generally more appropriate for determining claims for consequential damage that the parties have, or could have, addressed in their agreement.*" (Emphasis added.)

We are in accord with the reasoning of the New Jersey Supreme Court. An extension of tort liability for economic damages to subsequent purchasers of commercial property is unwarranted. In the case of sophisticated commercial entities in the commercial real estate market, contract law is the proper device to allocate economic risk.

For the foregoing reasons the certified question is answered in the negative. In the absence of privity of contract with the general contractor, the subsequent purchaser of a commercial building in Rhode Island is not entitled to recover economic damages that are proximately caused by the negligence of a general contractor.

This opinion is returned to the United States District Court for the District of Rhode Island.

BOURCIER, J., did not participate.