DECISION
This matter comes before this Court pursuant to a motion for partial summary judgment. David B. Hathaway (hereinafter "Plaintiff") filed this motion on November 28, 2001 in his capacity as the Chapter 7 Bankruptcy Trustee for Charles W. Anderson (hereinafter "Anderson"). Prior to Plaintiff's appointment, Anderson was the sole shareholder of all of the stock in Willow Glen Inc., which is presently a dissolved corporation with no assets. The Plaintiff's motion for partial summary judgment requests that this Court determine that Garafalo and Associates, Inc. (hereinafter "Defendant" or "Garafalo") is not entitled to utilize the doctrine of privity in defending against the Plaintiff's complaint, which alleges claims of negligence, breach of warranty, and breach of contract.
 I. FACTS
Approximately seventeen years ago in the fall of 1986, Garafalo entered into a contract with Future Development, Inc. through its principal, Robert Catanzaro. The contract pertained to the performance of engineering design services for the development of a condominium complex on Oakland Beach Avenue in Warwick, Rhode Island. At that time, it was Catanzaro's intent to develop the 100-unit condominium complex on land formerly known as Lou's Driving Range, and Garafalo was to conduct surveys and engineering design services for the project.
During the performance of the survey related services specified in the contract, Garafalo relied upon a survey previously completed by third party defendant Carlos D'Antonio (hereinafter "D'Antonio"). It is Garafalo's reliance upon this survey that is the impetus for the present lawsuit.[1] Subsequent to Garafalo's utilization of the D'Antonio survey, and despite Catanzaro's initial intent to build the condominium complex, Future Development Inc. sold the property to Willow Glen Associates, which was comprised of Lawrence LeBlanc and two additional partners. Willow Glen Associates then proceeded to sell the property to Anderson's company, Willow Glen Inc. Anderson, an experienced and licensed real estate broker, purchased the property as an investment for $3,100,000.00 and also apparently purchased the engineering plans.
It is not disputed that Garafalo knew of the purchase by Willow Glen Associates and LeBlanc. In fact, correspondence from Garafalo to Catanzaro dated July 13, 1987, clearly illustrates this fact. The letter states: "It is our understanding that you have recently sold the above property to Lawrence C. LeBlanc . . . We understand that all billing will continue to be directed to you, and that payment for services will be made by you." cording to the terms of the letter, Garafalo continued to work on the project after the property was sold to Willow Glen Associates. Despite Garafalo's knowledge of the sale from Future Development, Inc. to LeBlanc and Willow Glen Associates, the record is devoid of any evidence exhibiting Garafalo's knowledge of the subsequent sale to Anderson and Willow Glen, Inc.
Anderson filed the present lawsuit on December 23, 1991 and alleged that Garafalo's reliance upon D'Antonio's survey constituted a breach of contract and negligence causing Anderson great hardship, undue delay, monetary expense, and an inability to construct and market condominium units for sale. The damages alleged in each of the four counts of the complaint state that the Plaintiff suffered, and will suffer, "great economic harm."
 II. STANDARD OF REVIEW
The Plaintiff has requested that this Court grant its request for partial summary judgment as to Garafalo's ability to utilize the doctrine of privity as a defense in this lawsuit. The Rhode Island Supreme Court has oft repeated the standard a motion justice must employ in ruling on such a motion. "Summary judgment is a proceeding in which the proponent must demonstrate by affidavits, depositions, pleadings and other documentary matter . . . that he or she is entitled to judgment as a matter of law and that there are no genuine issues of material fact."Palmisciano v. Burrillville Racing Association, 603 A.2d 317, 320 (R.I. 1992) (citing Steinberg v. State, 427 A.2d 338 (R.I. 1981); Ludwig v.Kowal, 419 A.2d 297 (R.I. 1980)); Super. Ct. R. Civ. P. 56(c). When the moving party sustains its burden "[t]he opposing parties will not be allowed to rely upon mere allegations or denials in their pleadings. Rather, by affidavits or otherwise, they have an affirmative duty to set forth specific facts showing that there is a genuine issue of material fact." Bourg v. Bristol Boat Co., 705 A.2d 969 (R.I. 1998) (citing St.Paul Fire Marine Insurance Co. v. Russo Brothers, Inc.,641 A.2d 1297, 1299 (R.I. 1994)).
During a summary judgment proceeding "the court does not pass upon the weight or credibility of the evidence but must consider the affidavits and other pleadings in a light most favorable to the party opposing the motion." Palmisciano, 603 A.2d at 320 (citing Lennon v. MacGregor,423 A.2d 820 (R.I. 1980)). Thus, the only task of a trial justice in ruling on a summary judgment motion is to determine whether there is a genuine issue concerning any material fact. Id. (citing Rhode IslandHospital Trust National Bank v. Boiteau, 376 A.2d 323 (R.I. 1977)). Therefore, "when an examination of the pleadings, affidavits, admissions, answers to interrogatories and other similar matters, viewed in the light most favorable to the party opposing the motion, reveals no such issue, the suit is ripe for summary judgment." Id. (Citations omitted).
 IV. ANALYSIS
The Plaintiff asks this Court to preclude Garafalo from utilizing the doctrine of privity as a defense in this lawsuit. In so requesting, the Plaintiff strenuously argues that the Rhode Island Supreme Court's holding in Forte Brothers, Inc. v. National Amusements, Inc., et al.
controls here because the factual scenarios presented in both this and the Forte case are analogous. 525 A.2d 1301 (R.I. 1987). Garafalo has objected to this motion and contends that the Forte case is easily distinguished from the facts at hand, and instead urges this Court to deny the Plaintiff's motion for partial summary judgment based on the Rhode Island Supreme Court's holding in Boston Investment Property # 1State, A Massachusetts Limited Partnership v. E.W. Burman, Inc.658 A.2d 515 (R.I. 1995).[2] For the reasons set forth below, this Court agrees with the Defendant.
The recent trend in the law across the country, and in the State of Rhode Island, has unequivocally been intended to abrogate the protection afforded to architects, engineers, and contractors in certain suits brought by third parties. Walsh v. Gowing, 494 A.2d 543, 546 (R.I. 1985); Temple Sinai-Suburban Reform Temple v. Richmond, 112 R.I. 234,308 A.2d 508 (1973). In fact, the Rhode Island General Assembly enacted General Law § 9-1-29, Constructors of improvements to real property — Immunity from liability, in response to the demise of the doctrine in such situations. Walsh, 494 A.2d at 546 (citing R.I. Gen. Law § 9-1-29 (1975). Although modern courts have found it appropriate to limit the application of the doctrine of privity in certain circumstances, and have clearly increased a contractor's potential to liability in the course of doing so, it is clear that the Rhode Island Supreme Court is reluctant to extend the abolition of the doctrine to all disputes involving contractors and third parties. See Rousseau v. K.N.Construction, Inc., 727 A.2d 190 (R.I. 1999); Boston Investment, 658 A.2d at 517, 518; Forte, 525 A.2d at 1303.
First, in the Forte case, the Supreme Court held that a third party could maintain a negligence action against an architect or site engineer when it was foreseeable that the third party could be injured or suffer an economic loss proximately caused by the negligence of the architect or site engineer even in the absence of privity. Forte, 525 A.2d at 1302-1303. In the Forte case, the Plaintiff had contracted with National Amusements, Inc. to perform excavation and grading work for a movie cinema to be constructed in Warwick. Id. at 1302. National Amusements also retained Allen Demurjian (hereinafter "Allen") as a supervising architect / site engineer. Id. Pursuant to Allen's agreement with National Amusements, it was Allen's duty to measure the amount of material the Plaintiff removed from the premises and to approve any payments to the Plaintiff. Id. After Allen failed to make these reports to National Amusements, the Plaintiff filed suit against National Amusements and also against Allen. Id. Allen disputed any imposition of liability because the company was acting as National Amusement's agent and was not in privity of contract with the Plaintiff. Id. at 1302-1303. The Court rejected Allen's argument, and in doing so, joined an "emerging majority of jurisdictions [which] have taken the position that a contractor can maintain a negligence action against an architect without direct privity of contract between the parties." Id. at 1303 (citing Detweiler Bros.Inc. v. John Graham Co., 412 F. Supp. 416, 419 (E.D.Wash. 1976)). A key factor in the decision was the Plaintiff's reliance upon Allen's duty as the supervising architect/site engineer to measure the removal of the boulders from the property. Id. at 1303.
While, at first blush, the Supreme Court's decision in Forte appears to bolster the Plaintiff's arguments, an examination of subsequent Rhode Island Supreme Court decisions shows otherwise. In the Boston Investment
case, the Court examined the following question: "In the absence of privity of contract with the general contractor, is the subsequent purchaser of a commercial office building in Rhode Island entitled to recover economic damages which it is alleged were proximately caused by the negligence of the general contractor?"[3] Boston Investment, 658 A.2d at 515. The facts of the Boston Investment case involved a plaintiff who had purchased a commercial building and subsequently discovered that the building's windows leaked and that there were erosion problems in the parking lot. Id. After the plaintiff sued the seller of the property, the seller then went on to file a third party complaint against the contractor, and more importantly, the plaintiff added a negligence claim against the contractor. Id. at 516.
Similar to the Plaintiff in this case, the plaintiff in BostonInvestment heavily relied upon the Supreme Court's holding in ForteBros. and argued that "equity, public policy and existing Rhode Island law should afford innocent purchasers like Boston Investment the chance to recover economic losses stemming from the negligence of construction professionals." Id. The Court rejected this argument and distinguished the Forte case based on the fact that the plaintiff in the Boston Investment
case was a future buyer, not known or identifiable to the general contractor, whereas in the Forte case, Allen knew of the plaintiff's presence in the transaction and essentially was the Plaintiff's collaborator in the project. Boston Investment, 658 A.2d at 516-517. Based on these facts, the Court found that Allen could foresee that the plaintiff could be harmed by a failure to carry out its duties as the supervising architect/site engineer. Boston Investment, 658 A.2d at 516-517.
More importantly, Justice Shea went on to explore the framework for risk allocation in commercial real estate transactions and based a large part of his analysis on the Court's prior decision inHydro-Manufacturing, Inc. v Kayser-Roth Corp. Id. at 517 (citingHydro-Manufacturing, Inc. v Kayser-Roth Corp. 640 A.2d 950 (R.I. 1994)). In the Hydro-Manufacturing case, the Supreme Court stated:
 "the duty that sellers owe to subsequent purchasers is established primarily through contracts between the parties who theoretically reach an arms-length agreement on a sale price that reflects the true value of land. Id. (citing Philadelphia Electric Co. v. Hercules, Inc., 762 F.2d 303, 312 (3d Cir. 1985)). A buyer has the option to inspect the property and inquire into possible defects prior to purchase. Hydro-Manufacturing, 640 A.2d at 955.
Boston Investment, 658 A.2d at 517 (citing Hydro-Manufacturing, 640 A.2d at 955-956)). Finally, the Supreme Court concluded that the plaintiff was unable to maintain the claim against the contractor because sophisticated commercial entities should be permitted to use contract, and not tort, law to protect themselves from economic damages. See Boston Investment, 658 A.2d at 517-518. In reaching this conclusion, the Court reasoned that extending "tort liability for economic damages to subsequent purchasers of commercial property is unwarranted" because "contract law is the proper device to allocate economic risk. Id. at 518; See also Berschauer /Phillips Construction v. Seattle School District, 881 P.2d 986, 993 (1994) (stating that "if tort and contract remedies were allowed to overlap, particularly in the construction industry, certainty and predictability in allocating risk would decrease and impede future business activity").
The factual circumstances of the present matter involve two commercial entities at odds over whether the Plaintiff can maintain an action against Garafalo for allegedly using a faulty survey. While the Plaintiff urges this Court to focus on the fact that there may be some confusion as to when Anderson became involved in the deal, it is undisputed that Garafalo's duties in regard to the condominium complex were completed prior to the purchase by Anderson and Willow Glen, Inc. and it is also undisputed that the Plaintiff and Garafalo were never in privity of contract in regard to the property and development of the condominium complex. The Plaintiff's efforts to focus the Court's analysis upon these factors, however, neither successfully establishes nor persuades this Court to find that Garafalo could have foreseen the injury Anderson would sustain if he relied on a faulty survey. Simply alleging that Garafalo may have known that Anderson, a sophisticated businessman well versed in the complexities of large real estate transactions, was somehow involved in the deal, does not diminish the clear holdings of the Rhode Island Supreme Court rendered in cases involving commercial real estate transactions. As in the Boston Investment case, here Anderson had ample opportunity to peruse the property and plans prior to making the investment.
Additionally, the losses for which the Plaintiff now seeks to recover are all economic in nature. According to the Rhode Island Supreme Court's holding in the Boston Investment case, it is clear that contract, and not tort, principles apply to such claims. 658 A.2d at 517. Therefore, it would be inappropriate here to preclude Garafalo from utilizing the doctrine of privity in its defense as this case moves on. To do so would disregard the Rhode Island Supreme Court's unambiguous rationale, and this Court does not have the power to do so.
 V. CONCLUSION
After review of the evidence submitted and the well settled case law of this jurisdiction, this Court denies the Plaintiff's motion for partial summary judgment. Thus, Garafalo is permitted to utilize the doctrine of privity in its defense.
[1] Although the determination as to whether Catanzaro authorized Garafalo to rely upon D'Antonio's survey is factually in dispute, it is of no consequence to the motion presently before this Court.
[2] Garafalo also contends that the Plaintiff's motion for partial summary judgment is essentially an untimely motion to strike, as provided for in Rule 12(f) of the Superior Court Rules of Civil Procedure. While Garafalo is correct with respect to this procedural technicality, it is generally held that motions under Rule 12(f) are viewed with disfavor because "striking a portion of a pleading is a drastic remedy." 5A, Charles Alan Wright Arthur R. Miller, Federal Practice andProcedure § 1380 (ed. 1990) (citing U.S. v. Marisol, 725 F. Supp. 833
(M.D.Pa. 1989)). Furthermore, the provision of Rule 12(f), which allows the court to strike a defense on its "own initiative at any time" has been interpreted to mean that the court is permitted to both consider and grant untimely motions to strike if the circumstances deem it appropriate." Id.
[3] The question was certified to the Rhode Island Supreme Court from the United States District Court for the District of Rhode Island. BostonInvestment, 615 A.2d at 515.