DECISION
Before this Court is a motion for judgment on the pleadings brought by George Almeida, Jr., d/b/a George Almeida Insurance ("Almeida" or "defendant") and Sean Lennon ("Lennon" or "defendant") against Triton Realty, Inc. and Triton Realty Limited Partnership (collectively referred to as "Triton" or "plaintiff"), owner of the property on which stood the Station nightclub prior to the fire of February 2003. The plaintiff has alleged damages stemming from the negligent conduct of the defendant, an insurance broker, in procuring a liability insurance policy pursuant to the terms of the lease agreement between the plaintiff and its tenants.
 Facts and Travel
Triton Realty, Inc., a Rhode Island corporation, serves as general partner of Triton Realty Limited Partnership, a limited liability partnership operating out of Cranston, Rhode Island. George Almeida, Jr., d/b/a George Almeida Insurance, is a Rhode Island corporation that provides commercial accounts with liability, property, and fire insurance. Lennon is a licensed Rhode Island insurance agent who was employed by Almeida at the time of the events giving rise to the underlying dispute.
Triton owns commercial properties in Rhode Island, including property located at 211 Cowesett Avenue, West Warwick, Rhode Island ("Station property"). According to the Complaint filed by Triton, the plaintiff entered into a lease agreement with Derco, LLC, Michael Derderian, and Jeffrey Derderian (collectively referred to as "Derco"), relative to the Station property. Derco used this property to operate the Station nightclub. Allegedly, a provision of the lease required that Derco at all times maintain adequate liability coverage for its business operations on the Station property and that Triton be named as an insured on the policy. (Complaint at Paragraph 12.)
Derco acquired a liability insurance policy through Lennon, as an agent of Almeida. However, despite the lease provision noted above, Triton was never named as an insured on the policy. Id.
at Paragraph 14. The plaintiff's Complaint alleges that Almeida and Lennon were aware that Derco was merely a tenant, and not the owner, of 211 Cowesett Avenue yet did not review the lease agreement between Derco and Triton to determine Derco's insurance obligations. Id. at Paragraph 13. Triton also claims that Derco contacted Lennon in January 2003 and specifically requested that Triton be added as an additional insured on the existing policy.Id. at Paragraph 16. In response, Lennon then contacted Gresham Associates of Rhode Island, Inc. ("Gresham"), the insurance broker with whom Lennon had been working on the existing account, regarding adding Triton to Derco's policy. This request was never followed up on, however, and Triton was never added. Id. at Paragraph 17-18. Both Gresham and Essex Mutual Insurance Company ("Essex"), the company that issued the policy, refute any such request was made. Consequently, Essex denied coverage when Triton sought financial relief following the Station nightclub fire of February 2003.
On the aforementioned facts, the plaintiff claims that Lennon, as an agent of Almeida, acted negligently by allowing his client, Derco, to purchase a liability policy on its leased commercial property without naming the property's owner as an additional insured pursuant to the provisions of the lease. Moreover, Triton also claims that the defendant negligently failed to follow up with Gresham concerning Derco's January 2003 request to add Triton as a named insured on the policy. The defendant filed a timely answer to the plaintiff's Complaint, as well as a cross-claim against Gresham.[1] On October 3, 2005, after the pleadings were closed, the defendant timely filed the instant motion for judgment on the pleadings pursuant to Super. R. Civ. P. Rule 12(c).
 Defendant's Motion for Judgment on the Pleadings
A Rule 12(c) motion for judgment on the pleadings gives the Superior Court the ability to dispose of a case early in the litigation process "when the material facts are not in dispute . . . and only questions of law remain to be decided." Haley v.Town of Lincoln, 611 A.2d 845, 847 (R.I. 1992) (citation omitted). The Court is restricted to a review of the pled facts in a manner most favorable to the nonmoving party. Id. As such, the allegations made in the nonmoving party's pleadings are deemed true for the purposes of the motion. Id.; see alsoCenterville Builders, Inc. v. Wynne, 683 A.2d 1340, 1342 (R.I. 1996). With regard to the instant motion, the defendant proffers two arguments: it maintains that Count I of the plaintiff's Complaint is barred pursuant to the economic loss doctrine; and, in the alternative, it alleges that the Complaint fails to cite any facts evidencing a duty of care owed to Triton by either Almeida or Lennon. Under either legal analysis, the defendant claims that Count I of Triton's Complaint must fail as a matter of law.
The economic loss doctrine provides that a party is barred from "recovering purely economic losses in a negligence cause of action." Boston Inv. Prop. #1 State v. E.W. Burman, Inc.,658 A.2d 515, 517 (R.I. 1995). In the underlying Complaint, Triton has alleged only financial damages. As such, the defendant contends that Count I, which cites negligence as the cause of action, is prohibited by law. The Rhode Island Supreme Court has recognized the economic loss doctrine, but its application has been limited to disputes involving commercial entities yielding equal bargaining power. Such a limitation has been imposed because it is reasonable "for sophisticated commercial entities to utilize contract law to protect themselves from economic damages." Id.; cf. Rosseau v. K.N. Constr., Inc.,727 A.2d 190, 193 (holding that the economic loss doctrine does not apply in consumer transactions, in accord with the "long adhered to 
tradition of providing increased protection and opportunity for recovery in cases in which consumers deal with commercial entities"). Thus, the court is willing to overlook the absence of privity between parties to a tort action only in the consumer context where the consumer requires "increased protection and an opportunity for recovery." Rousseau, 727 A.2d at 193.
Nonetheless, even when the dispute involves sophisticated commercial entities, the Rhode Island Supreme Court has refused to apply the economic loss doctrine in circumstances where the parties shared an economic relationship such that the "foreseeabilility of harm to [the plaintiff] was high if [the defendant] failed to perform its job." Boston Inv. Prop. #1State, 658 A.2d at 517. This exception is a narrow one, however, predicated on the existence of a high level of foreseeability. Thus, when a party has acted entirely independently from the other, it cannot then be held accountable for unforeseeable economic damages, and a negligence claim will be barred as a matter of law. Compare Forte Bros., Inc. v. Nat'l Amusements,Inc., 525 A.3d 1301, 1302-03 (R.I. 1987) (holding that a "third-party general contractor who may foreseeably be injured or suffer an economic loss proximately caused by the negligent performance of a contractual duty by an architect/site engineer has a cause of action in negligence against the architect/site engineer notwithstanding an absence of privity") with BostonInv. Prop. #1 State, 658 A.2d at 518 ("In the absence of privity of contract with the general contractor, the subsequent purchaser of a commercial building in Rhode Island is not entitled to recover economic damages that are proximately caused by the negligence of a general contractor").
The economic loss doctrine applies on the facts before the Court. Triton, Lennon, and Almeida are all sophisticated commercial entities involved in a commercial transaction. Therefore, the proper course would have been for the parties to "utilize contract law to protect themselves from economic damages." Boston Inv. Prop. #1 State, 658 A.2d at 517. Triton could have calculated for the risk that its insurance coverage on the Station property would be insufficient by allocating that risk in its lease agreement with Derco.
It is a well-established maxim that "`tort principles, such as negligence, are better suited for resolving claims involving unanticipated physical injury. . . . Contract principles, on the other hand are generally more appropriate for determining claims for consequential damage that the parties have or could have addressed.'" Id. at 518 (quoting Spring Motors Distribs., Inc.v. Ford Motor Co., 98 N.J. 555, 579-80, 489 A.2d 660, 672
(1985)); see also Gail Francis, Inc. v. Alaska Diesel Elec.,Inc., 62 F. Supp. 2d. 511, 518 (D.R.I. 1999) (applying the economic loss doctrine to preclude a negligence claim between a fishing tour company and a diesel engine supplier because "[t]ort causes of action . . . are reserved for situations where injury results from unforeseen danger which makes it impossible to take preliminary precautions"). The plaintiff, a commercial landlord, had ample opportunity to allocate contractually whatever risks it deemed necessary. Applying contract law in lieu of tort principles places a reasonable onus on parties able to anticipate certain losses and "confin[es] remedies for contract-type losses to contract law." All-Tech Telecom, Inc. v. Amway Corp.,174 F.3d 862, 865 (7th Cir. 1999) (Posner, C.J.); see also
Thomas C. Galligan, Jr., Contortions Along the Boundary BetweenContracts and Torts, 69 Tul. L. Rev. 457, 515-20 (1994) (exploring the justifications for the economic loss doctrine, including encouraging parties to contract for purely economic risks).
Moreover, the relationships among the parties were such that the defendant could not have reasonably foreseen its own negligence becoming the proximate cause of financial injury to the plaintiff. Assuming the facts alleged in the plaintiff's pleadings to be true, as the Court must, Lennon, as an agent of Almeida, followed his client's instructions in procuring a liability policy covering only Derco on the Station property. Subsequently, Lennon again followed his client's directions by asking Gresham about adding Triton as a named insured on that policy. At no time did the plaintiff and defendant "share an economic relationship and community of interest." Boston Inv.Prop. #1 State, 658 A.2d at 516.
The plaintiff maintains that the facts of this case resemble those in Forte Brothers, in which the Rhode Island Supreme Court refused to apply the economic loss doctrine. In ForteBrothers, National Amusements, Inc. ("National") hired Forte Brothers, Inc. ("Forte") to perform excavation work on a construction project. Forte Brothers, Inc., 525 A.2d at 1301. National subsequently contracted with Allen Demurjian ("Allen") to be the supervising architect and site engineer for the same project. Id. As part of their respective obligations, Forte was to remove certain rocks and boulders from the project site, while Allen was to measure the removal, report the removal to National, and approve payment to Forte. Id. Forte then brought a negligence action against Allen alleging that National refused payment because of Allen's negligence in reporting the rock and boulder removal. Id. Our Supreme Court reversed the trial court's granting of summary judgment, concluding that a duty extended from Allen to Forte because Allen, as the supervising architect, held "`[a]ltogether too much control over [Forte] . . . for him not to be placed under a duty imposed by law to perform without negligence his functions as they affect [Forte].'" Id.
at 1303 (quoting United States v. Rogers Rogers,161 F. Supp. 132, 136 (S.D. Cal. 1958)). The Forte Brothers Court stressed that its decision was predicated on the facts before it evidencing "direct and reasonable reliance by the [plaintiff] on the contractual performance of the [defendant] when the [defendant] knows, or should know, of that reliance." Id.
In this case, there is nothing in the pleadings suggesting that Almeida or Lennon were, or should have been, aware that Triton was placing "direct and reasonable reliance" on the defendant's successfully amending the policy. To the contrary, such an economic risk is one that a sophisticated commercial entity such as Triton should have allocated contractually. See
49 Am. Jur. 2d Landlord and Tenant § 472 (1995) ("[a] landlord may contract with the tenant with respect to the procurement of insurance to cover the risk of liability"). In this vein, the two relationships — that between Triton and Derco and between Almeida and Derco — were "wholly independent of each other." Boston Inv.Prop. #1 State, 658 A.2d at 517. The plaintiff alleges neither that it was a named insured on the policy procured by Almeida nor that any contractual relationship existed between the parties. An insurance agent assumes only those duties typically found in an agency relationship, including the obligation to use reasonable care, diligence, and judgment in procuring the policy as requested by the insured. See 3 Couch on Insurance, Duties and Liabilities of Agent, § 25:37 at p. 336 (2d ed. 1984). Accordingly, the defendant would have been reasonable in presuming that Triton would have contractually protected against any financial risk involved in its dealings with Derco.
Viewing the facts pled as true, and in a light most favorable to the nonmoving party, the Court concludes that, as a matter of law, the plaintiff's negligence claim, set forth in Count I of its Complaint, is barred by the economic loss doctrine. As such, the Court need not address whether a duty of care runs from the defendant to the plaintiff on these facts. The defendant's motion for judgment on the pleadings as to Count I of the plaintiff's Complaint is granted. Counsel shall submit an order for entry consistent with this opinion.
[1] Almeida and Gresham, both insurance brokers, entered into a contract in January 2002 providing for the issuance of a liability insurance policy on behalf of Derco and Essex, respectively. After being served with Triton's complaint, Almeida filed a cross-claim against Gresham, alleging that it had faxed Gresham a request to add Triton as a named insured on the policy covering the Station property. (Cross-claim at Paragraph 7.) Further, Almeida alleges that it forwarded a check representing the increased premium. Id. at 8-9. Therefore, Almeida avers in the cross-claim that, in the event Triton is found to have suffered damages for which it may recover, it was Gresham's negligence that was the proximate cause. The facts alleged in the cross-claim are irrelevant to the instant motion for judgment on the pleadings, however, as this Court is bound to assume the facts alleged by Triton, the nonmoving party, to be true for the purposes of the motion.