DECISION
Before this Court is a motion for judgment on the pleadings in a negligence action filed by Triton Realty Limited Partnership and Triton Realty, Inc. (collectively "Plaintiff") against Gresham Associates of Rhode Island, Inc. ("Defendant"), George Almeida, Jr. d/b/a George Almeida Insurance Co. ("Almeida"), Sean Lennon ("Lennon"), and Burlington Insurance Company. In Count II of its complaint, Plaintiff alleges that it sustained financial damages as a result of Defendant's negligence. Pursuant to Super. R. Civ. P. Rule 12(c), Defendant now moves this Court to dismiss Plaintiff's Complaint and grant judgment on the pleadings in its favor.
 Facts and Travel
Plaintiff is a limited liability partnership that owns the property on which stood the Station nightclub prior to the fire of February 2003. Defendant is an insurance brokerage corporation organized and operating under the laws of Georgia with a place of business located in East Greenwich, Rhode Island. The instant motion follows on the heels of another motion for judgment on the pleadings recently decided by this Court.[1] The facts delineated in the March 29, 2006 Decision relative to that motion likewise apply to the motion at bar.
The following is a recitation of those facts, as set forth in this Court's March 29, 2006 Decision:
 "According to the Complaint filed by [Plaintiff], [Plaintiff] entered into a lease agreement with Derco, LLC, Michael Derderian, and Jeffrey Derderian (collectively referred to as "Derco"), relative to the Station property. Derco used this property to operate the Station nightclub. Allegedly, a provision of the lease required that Derco at all times maintain adequate liability coverage for its business operations on the Station property and that [Plaintiff] be named as an insured on the policy. (Complaint at Paragraph 12.)
 Derco acquired a liability insurance policy through Lennon, as an agent of Almeida. However, despite the lease provision noted above, Triton was never named as an insured on the policy. Id. at Paragraph 14. [Plaintiff's] Complaint alleges that Almeida and Lennon were aware that Derco was merely a tenant, and not the owner, of 211 Cowesett Avenue yet did not review the lease agreement between Derco and [Plaintiff] to determine Derco's insurance obligations. Id. at Paragraph 13. [Plaintiff] also claims that Derco contacted Lennon in January 2003 and specifically requested that [it] be added as an additional insured on the existing policy. Id. at Paragraph 16. In response, Lennon then contacted [Defendant], the insurance broker with whom Lennon had been working on the existing account, regarding adding [Plaintiff] to Derco's policy. This request was never followed up on, however, and [Plaintiff] was never added. Id. at Paragraph 17-18. Both [Defendant] and Essex Mutual Insurance Company ("Essex"), the company that issued the policy, refute any such request was made. Consequently, Essex denied coverage when [Plaintiff] sought financial relief following the Station nightclub fire of February 2003." Triton Realty Ltd. P'ship v. Almeida, No. 04-2335, March 29, 2006, Gibney J.
Plaintiff's complaint alleges that Defendant received a facsimile from Lennon requesting that Plaintiff be added as an insured on Derco's insurance policy with Essex. (Complaint at Paragraph 22.) Plaintiff further asserts that the failure to accommodate that request constitutes negligence on Defendant's behalf that caused Plaintiff great financial damage. Id. at Paragraphs 23-26. With respect to the above claim, Defendant has filed the instant motion for judgment on the pleadings pursuant to Super. R. Civ. P. Rule 12(c).
 The Arguments
Citing the economic loss doctrine, Defendant contends that Plaintiff is precluded from claiming strictly financial damages in a legal action sounding in negligence. Furthermore, Defendant proffers that the law of the case doctrine dictates that this Court enter judgment in Defendant's favor for the same reasons that the Court did so previously in Almeida's favor. Under either theory, Defendant claims that it is entitled to judgment as a matter of law. Plaintiff opposes the motion at bar, maintaining that the claim in question is not the type of legal action to which the economic loss doctrine applies. Rather, Plaintiff asserts that the charge is one of "misfeasance" on the part of Defendant. (May 8, 2006 Hearing Tr. at 4.)
 Standard of Review
Pursuant to Super. R. Civ. P. Rule 12(c), this Court has the authority to resolve a case as a matter of law in the event that "material facts are not in dispute . . . and only questions of law remain to be decided." Haley v. Town of Lincoln,611 A.2d 845, 847 (R.I. 1992) (citation omitted). A Rule 12(c) motion is tantamount to a Rule 12(b)(6) motion in that it will be granted only when the moving party can demonstrate that Plaintiff will not be entitled to relief under any set of facts that might be proved at trial. See Collins v. Fairways Condos. Ass'n,592 A.2d 147 (R.I. 1991). This Court must review the pleadings in a fashion most favorable to the nonmoving party. Haley,611 A.2d at 847. Consequently, all facts pled by the nonmoving party are deemed true for the purposes of the motion. Id.; see alsoCenterville Builders, Inc. v. Wynne, 683 A.2d 1340, 1342 (R.I. 1996).
 The Economic Loss Doctrine
The underpinning of the instant motion is that Plaintiff's claim against Defendant is not proper because Plaintiff has alleged purely financial damages resulting from Defendant's negligence. Well-established in this jurisdiction, the economic loss doctrine precludes recovery for "purely economic losses in a negligence cause of action." Boston Inv. Prop. #1 State v. E.W.Berman, Inc., 658 A.2d 515, 517 (R.I. 1995); see Levin v.Kilborn, 756 A.2d 169, 174 (R.I. 2000) (noting that the economic loss doctrine "make[s] tort claims unavailable in circumstances in which the parties were in a contractual setting and the injuries were purely economic"). The rationale for the rule, as articulated by our Supreme Court, is that "tort principles, such as negligence, are better suited for resolving claims involving unanticipated physical injury." Boston Inv. Prop. #1 State,658 A.2d at 518 (quoting Spring Motors Distribs., Inc. v. Ford MotorCo., 98 N.J. 555, 579-80, 489 A.2d 660, 672 (1985)). In contrast, "[c]ontract principles . . . are generally more appropriate for determining claims for consequential damage that the parties have or could have addressed." Id.
It is the ability to foresee risks, and take preliminary precautions to avoid those risks, that creates the need for such a doctrine. See, e.g., Gail Francis, Inc. v. Alaska DieselElec., Inc., 62 F. Supp. 2d 511, 518 (D.R.I. 1999) (dismissing a negligence claim between a fishing tour company and a diesel engine supplier because the alleged injury was financial and should have been allocated for by contract). Therefore, our Supreme Court has fashioned exceptions relative to this common law doctrine. First, the rule is generally inapplicable when there exists a marked disparity in bargaining power between the parties, such as when the parties share a consumer-merchant relationship. See Boston Inv. Prop. #1 State, 658 A.2d at 517
(finding it reasonable "for sophisticated commercial entities to utilize contract law to protect themselves from economic damages"); Rousseau v. K.N. Constr., Inc., 727 A.2d 190, 193
(R.I. 1999) (concluding that "the economic loss doctrine is not applicable to consumer transactions"). In addition, even when the dispute involves "sophisticated commercial entities," our Supreme Court has found the economic loss doctrine inapposite when the parties shared a close economic relationship thereby making it reasonably foreseeable that the actions of one will harm the other. See Forte Bros. Inc. v. Nat'l Amusements, Inc., 525 A.3d 1301, 1302-03 (R.I. 1987) (finding proper a negligence suit by a general contractor against a site engineer because it was reasonably foreseeable that the latter's negligence would cause the resultant damages).
In this case, the economic loss doctrine is applicable. It is palpable that Plaintiff's claim against Defendant is one of negligence and that Plaintiff's alleged injuries are purely financial. Accordingly, in view of the economic loss doctrine, the claim at issue is barred as a matter of law unless one of the aforementioned exceptions applies. As the Court observed in its March 29, 2006 Decision, Plaintiff is a "commercial landlord" that "had ample opportunity to allocate contractually whatever risks it deemed necessary." Likewise, Defendant is a commercial insurance broker. As between sophisticated business entities participating in a commercial real estate transaction, "contract law is the proper device to allocate economic risk." Boston Inv.Prop. #1 State, 658 A.2d at 517.
Moreover, there is nothing in the pleadings to suggest that Defendant could have reasonably foreseen the financial harm that Plaintiff has alleged. To the contrary, it is evident that no privity — contractual or otherwise — existed between the parties. In its complaint, Plaintiff charges that Defendant "failed to inform Essex Mutual Insurance Company of the request to add Triton as an additional insured." (Complaint at Paragraph 23.) Assuming the facts alleged in Plaintiff's complaint to be true and viewing those facts in a light most favorable to Plaintiff — as this Court is obliged to do when reviewing a motion for judgment on the pleadings — this Court is satisfied that Plaintiff has not, and could not, establish facts showing that Defendant would have reasonably anticipated financial harm to Plaintiff as a potential consequent of its actions. Instead, the pleadings indicate that Defendant was contacted by Almeida — specifically, Lennon — to procure a property insurance policy for Derco. It is evident that Plaintiff "was neither known to nor identifiable" to Defendant. Boston Inv. Prop. #1 State,658 A.2d at 517. Consequently, Plaintiff's dealings with Derco and Defendant's dealings with Almeida — as Derco's agent — "were wholly independent of each other." Id. But cf. ForteBros., Inc., 525 A.2d at 1303 (holding that, despite a lack of contractual privity, the "economic relationship" between a contractor and an architect "establish[ed] a direct and reasonable reliance" by one "on the contractual performance" of the other when the other "knows, or should know, of that reliance"). Accordingly, the economic relationship between Plaintiff and Defendant was so tenuous that it was not reasonably foreseeable that Defendant's actions would cause Plaintiff financial harm.
Because this Court concludes that the economic loss doctrine precludes count II of Plaintiff's complaint in this case, Defendant's argument relative to the law of the case is not relevant to the ultimate disposition of the instant motion. The issue is, therefore, moot.[2]
Finally, Plaintiff contends that the allegations against Defendant stem from Defendant's "misfeasance," and, as such, this is not the type of claim ordinarily covered under the economic loss doctrine. (May 8, 2006 Hr'g Tr. at 4-5.) Plaintiff proffers that its losses were due to Defendant's failure in procuring a commercial insurance policy and, therefore, that "this is not an `economic loss' which could have been foreseen and guarded against by the placement of insurance." (Pls.' Mem. In Opp'n To Gersham's [sic] Mot. for J. on the Pleadings.) Plaintiff's argument in this context is misplaced. The economic loss doctrine was created specifically to induce commercial entities to allocate their foreseeable financial risks through the utilization of contract law rather than tort law. See BostonInv. Prop. #1 State, 658 A.2d at 516-18. To this end, Plaintiff, in its dealings with Derco, had an opportunity either to procure appropriate property insurance coverage itself or to provide contractually for the same. Accordingly, the economic loss doctrine applies on the facts pled in count II of Plaintiff's complaint.
 CONCLUSION
After reviewing the record in this case, taking all facts pled to be true and viewed in a light most favorable to Plaintiff, this Court concludes that the economic loss doctrine bars the negligence claim in count II of Plaintiff's complaint. Defendant's motion for judgment on the pleadings is granted.[3] Counsel shall submit an order for entry consistent with this opinion.
[1] See Triton Realty Ltd. P'ship v. Almeida, No. 04-2335, March 29, 2006, Gibney J. Count I of Plaintiff's complaint alleges that Almeida's negligent conduct caused Plaintiff financial damages. Almeida filed a motion for judgment on the pleadings with respect to count I, and, on March 29, 2006, this Court filed a Decision granting that motion in favor of Almeida and Lennon.
[2] This Court does note, for purposes of discussion, that the law of the case doctrine does not apply to the motion at bar. Defendant refers the Court to its March 29, 2006 Decision, granting Almeida's and Lennon's motion for judgment on the pleadings thereby dismissing Plaintiff's negligence claims against those particular defendants. Therefore, pursuant to Defendant's claim, the law of the case doctrine mandates this Court now enter judgment in favor of Defendant for the same reasons it entered judgment in favor of Almeida and Lennon. The law-of-the-case doctrine provides that "ordinarily, after a judge has decided an interlocutory matter in a pending suit, a second judge, confronted at a later stage of the suit with the same question in the identical matter, should refrain from disturbing the first ruling." Gucfa v. King, 865 A.2d 328, 332 (R.I. 2005) (quoting Paolella v. Radiologic Leasing Assocs., 769 A.2d 596,599 (R.I. 2001)) (citation omitted). This rule is regarded as one of convenience, and therefore, it "generally ought to be adhered to for the principal reason that it is designed to promote the stability of decisions of judges of the same court and to avoid unseemly contests and differences that otherwise might arise among them to the detriment of public confidence in the judicial function." Payne v. Super. Ct. for Providence County,78 R.I. 177, 184-85, 80 A.2d 159, 163 (1951). However, a justice may disregard the rule when the subsequent ruling is based on an expanded record or when the earlier ruling was erroneous.Chavers v. Fleet Bank, 844 A.2d 666, 677-85 (R.I. 2004) (citations omitted). In this case, the previous motion concerned Almeida, an insurance agency acting on behalf of Plaintiff's tenant. (Triton Realty Ltd. P'ship v. Almeida, No. 04-2335, March 29, 2006, Gibney J.) The motion at bar involves the insurance brokerage firm contacted by Almeida to procure the aforementioned insurance policy. Consequently, the Court is satisfied that the issue confronted herein cannot be categorized as "the same question in the identical matter" as that dealt with in the previous motion. See Peters v. Jim Walter Door Sales,525 A.2d 46, 48 (R.I. 1987) (the rule is "meant to prevent needless repetition of work already completed," and, therefore, a justice "should not be bound by an earlier decision concerning a related but not identical issue"). Accordingly, relative to the instant motion, the law of the case doctrine is inapplicable.
[3] Defendant also prays that this Court dismiss a cross claim against it. On September 16, 2004, in response to Plaintiff's complaint, Almeida filed with this Court a cross claim against Defendant contending that, to the extent Almeida, or Lennon, is negligent, either is entitled to contribution and indemnification from Defendant. (Cross Claim at Paragraphs 13-20.) Because this Court dismissed Plaintiff's negligence claim against Almeida and Lennon see Triton Realty Ltd. P'ship v. Almeida, No. 04-2335, March 29, 2006, Gibney J., the cross claim at issue has been rendered moot. Also, pursuant to Plaintiff's request, the instant Decision is hereby made without prejudice to concurrent proceedings involving Defendant in the United States District Court for the District of Rhode Island and to concurrent proceedings involving Derco in the United States Bankruptcy Court for the District of Rhode Island.