FRANKLIN GROVE CORP.

v.

William DREXEL et al.

v.

TNT Building Corp. et al.

No. 2007–84–Appeal.

Supreme Court of Rhode Island.

Dec. 20, 2007.

Harmony A. Conti Bidurtha, Esq., for William P. Drexel.

Mark P. Dolan, Esq., Providence, Stanley Pupecki, Esq., for Norbert Thierien/National Land Surveyors.

David A. Wollin, Esq., Providence, for TNT Building Corp.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Chief Justice WILLIAMS, for the Court.

The defendants, William P. Drexel, National Land Surveyors–Developers, Inc. (National Land Surveyors), and Norbert Therien (collectively defendants), appeal from the Superior Court's grant of a motion for summary judgment in favor of the third-party defendant, TNT Development Corporation (TNT). For the reasons hereinafter set forth, we affirm the judgment of the Superior Court.

## I

### Facts and Travel

The plaintiff, Franklin Grove Corporation (Franklin Grove or plaintiff), is a Massachusetts corporation that purchased property on Nate Whipple Highway, Cumberland, Rhode Island, from Nadine P. and William D. Troll, Sr.[1] (the Trolls) in February 2001. The Trolls had used the property as a commercial llama farm. Pursuant to the purchase and sale agreement between the Trolls and Franklin Grove, the Trolls were to obtain a wetlands permit; they therefore hired Drexel, a registered professional engineer, to perform a delineation of wetlands, which was required to develop the property. After completing his survey and a delineation of wetlands, Drexel created a wetlands site plan and submitted it to the Rhode Island Department of Environmental Management (DEM).

Drexel subsequently obtained a wetlands permit, a physical alteration permit for a driveway, and an individual sewage disposal system permit on the Trolls' behalf. Then, sometime in 2000, the Trolls hired Drexel to do more work on the property, specifically the work necessary for subdividing the property. At that time, Drexel prepared and submitted applications for the necessary permits for lot Nos. 11A and 11B, on tax assessor's plat 44, the two lots resulting from the property subdivision.

After Drexel secured the permits for the Trolls, plaintiff hired National Land Surveyors to survey the property to prepare for the construction of a foundation for a house on one of the subdivided lots. The

---

**1.** Although Nadine and William Troll are defendants in the underlying matter, the Trolls are in bankruptcy and have moved to Florida. They are not parties to this appeal.

plaintiff then hired TNT to excavate the ground where the foundation would be laid. TNT and plaintiff entered into a contract that set forth, in detail, the work to be done, the price for the work, and any relevant clarifications and exclusions. Pursuant to this agreement, TNT excavated the site in the location designated by plaintiff and National Land Surveyors. Thereafter, a house was built on the lot.

Upon a subsequent inspection, however, DEM determined that the house had been constructed on wetlands. Accordingly, on October 16, 2003, DEM issued a notice of violation and ordered that the wetlands be restored.

In November 2003, plaintiff filed suit against the Trolls and Drexel, seeking economic damages. The plaintiff, alleging that Drexel incorrectly identified and incorrectly flagged the wetlands, directed three counts of the complaint toward Drexel: (1) professional negligence; (2) breach of contract; and (3) breach of guaranties. Sometime thereafter, plaintiff amended its complaint to add two additional defendants, Therien, an engineer hired to make changes to plans that Drexel had prepared, and National Land Surveyors. The plaintiff's suits against both Therien and National Land Surveyors also were based upon the theories of negligence, breach of contract, and breach of guaranties. Drexel, Therien, and National Land Surveyors then filed third-party complaints against TNT,[2] seeking indemnification or contribution, on the theory that TNT was responsible for the mistake in construction.

TNT filed a motion to dismiss the third-party complaint, pursuant to Rule 12(b)(6) of the Superior Court Rules of Civil Procedure.[3] After a series of hearings, the motion justice converted the motion to dismiss into a motion for summary judgment, pursuant to Rule 56 of the Superior Court Rules of Civil Procedure. After hearing arguments from both parties, the motion justice granted the motion for summary judgment and entered final judgment pursuant to Rule 54(b) of the Superior Court Rules of Civil Procedure. The motion justice ruled that there could not be a viable indemnification or contribution count based on the allegations of breach of contract and breach of guaranties because the Uniform Contribution Among Tortfeasors Act (UCATA), G.L.1956 chapter 6 of title 10, applies only to tort claims, and not to contract claims. The motion justice further concluded that defendants were barred from recovering on an indemnification or contribution action because the economic loss doctrine barred plaintiff from asserting a negligence claim against TNT, and, therefore, any derivative claims likewise were barred. Drexel, Therien, and National Land Surveyors have timely appealed the grant of summary judgment on the professional negligence issue, but they have not appealed the grant of summary judgment on the breach of contract and breach of guaranties issues.

## II

### Analysis

On appeal, defendants argue that the motion justice erred in granting TNT's motion for summary judgment. The de-

---

**2.** Third-party claims also were brought against another corporation, TNT Building Corporation, as well as TNT Development's principal, Timothy Bobola. The Superior Court dismissed all those third-party claims and no appeal was taken. Thus, neither TNT

Building Corporation nor Timothy Bobola is a party to this appeal.

**3.** The plaintiff did not object to the motion to dismiss TNT.

fendants advance several arguments to support their position that they were entitled to indemnification or contribution from TNT. Specifically, defendants allege that the motion justice erred in applying the economic loss doctrine because the instant case involves parties that were not "sophisticated" commercial entities. The defendants further contend that the economic loss doctrine has no significance in this case because the relevant construction involved a personal residential dwelling, rather than a commercial building. Finally, defendants assert that the economic loss doctrine cannot defeat a statutory cause of action, and thus they can properly bring a claim for indemnification or contribution against TNT under the UCATA.

## A

### Standard of Review

 A motion to dismiss for failure to state a claim is "treated as one for summary judgment when 'matters outside the pleading are presented to and not excluded by the court.'" *Steinberg v. State*, 427 A.2d 338, 339 n. 2 (R.I.1981) (quoting Rule 12(b)(6)). When this Court reviews a grant of a motion for summary judgment, we conduct a *de novo* review, and apply the same standards as the motion justice. *Smiler v. Napolitano*, 911 A.2d 1035, 1038 (R.I.2006). We will uphold the grant of a summary-judgment motion as long as "no genuine issues of material fact are evident from the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' and, in addition, the motion justice finds that the moving party is entitled to prevail as a matter of law." *Lavoie v. North East Knitting, Inc.*, 918 A.2d 225, 227–28 (R.I. 2007) (quoting Rule 56(c)). "The party opposing the motion for summary judgment 'carries the burden of proving by competent evidence the existence of a dis-

puted material issue of fact and cannot rest on allegations or denials in the pleadings or on conclusions or legal opinions.'" *Taylor v. Mass. Flora Realty, Inc.*, 840 A.2d 1126, 1129 (R.I.2004) (quoting *United Lending Corp. v. City of Providence*, 827 A.2d 626, 631 (R.I.2003)).

## B

### Economic Loss Doctrine

 The economic loss doctrine provides that "a plaintiff is precluded from recovering purely economic losses in a negligence cause of action." *Boston Investment Property # 1 State v. E.W. Burman, Inc.*, 658 A.2d 515, 517 (R.I.1995). In other words, under this doctrine, a plaintiff may not recover damages under a negligence claim when the plaintiff has suffered no personal injury or property damage. *Id.* This Court has looked to the Supreme Court of Washington for guidance on this issue: "[w]hen parties have contracted to protect against potential economic liability, as is the case in the construction industry, contract principles override * * * tort principles * * * and, thus, purely economic damages are not recoverable." *Id.* (quoting *Berschauer/Phillips Construction Co. v. Seattle School District*, 124 Wash.2d 816, 881 P.2d 986, 993 (1994)).

Our rationale for abiding by the economic loss doctrine centers on the notion that commercial transactions are more appropriately suited to resolution through the law of contract, than through the law of tort. *E.W. Burman, Inc.*, 658 A.2d at 517. We have stated that "it is appropriate for sophisticated commercial entities to utilize contract law to protect themselves from economic damages." *Id.* Indeed, we previously have expressed our agreement with the Supreme Court of New Jersey's decision in *Spring Motors Distributors, Inc. v.*

*Ford Motor Co.*, 98 N.J. 555, 489 A.2d 660, 672 (1985), in which the court stated that "[t]he purpose of a tort duty of care is to protect society's interest in freedom from harm, i.e., the duty arises from policy considerations formed without reference to any agreement between the parties. A contractual duty, by comparison, arises from society's interest in the performance of promises. Generally speaking, tort principles, such as negligence, are better suited for resolving claims involving unanticipated physical injury, particularly those arising out of an accident. Contract principles, on the other hand, are generally more appropriate for determining claims for consequential damage that the parties have, or could have, addressed in their agreement." *E.W. Burman, Inc.*, 658 A.2d at 517–18 (quoting *Spring Motors Distributors, Inc.*, 489 A.2d at 672).

■ As this doctrine has evolved, we have recognized some limitations to adhere to our tradition of "providing increased protection and an opportunity for recovery in cases [involving consumers]." *Rousseau v. K.N. Construction, Inc.*, 727 A.2d 190, 193 (R.I.1999). In *Rousseau,* we "explicitly limited our holding in *Burman* to commercial transactions." *Id.* The plaintiffs in that case were purchasers of real property. *Id.* at 191. They brought a negligence action against the defendants, K.N. Construction, Inc. (K.N.Construction), from whom they purchased the property, and Alfred P. Ferreira (Ferreira), an engineer who was hired by K.N. Construction to perform percolation tests on the property. *Id.* Ferreira's report indicated that the property was suitable for a septic system. *Id.* However, when the plaintiffs

attempted to construct a house on their lot, they alleged that the original tests performed by Ferreira were erroneous. *Id.* at 191–92. Consequently, the plaintiffs brought a negligence and fraud action against Ferreira, seeking only economic damages. *Id.* at 192. Although the lower court ruled in favor of Ferreira, this Court, in an effort to provide increased protection to consumers dealing with commercial entities, vacated the lower court's ruling and concluded that "'the economic loss doctrine is not applicable to consumer transactions.'" *Id.* at 192, 193. Thus, although this Court recognizes the economic loss doctrine as a bar to recovery, we limit its application to disputes involving commercial entities. *Id.* at 193.

■ The defendants contend that the economic loss doctrine does not apply because the parties are not "sophisticated" commercial entities. The economic loss doctrine does, however, apply to the facts before this Court; the doctrine applies to entities acting in a business capacity. *Rousseau,* 727 A.2d at 193. The motion justice properly determined that no party to this case was a consumer. Franklin Grove, Drexel, National Land Surveyors, Therien, and TNT all are commercial entities involved in a commercial transaction.[4]

The plaintiff is a Massachusetts corporation that purchased the property to develop it into two lots. Drexel is a registered professional engineer who was hired to delineate wetlands on a site plan for submission to DEM. The plaintiff hired National Land Surveyors and Therien to provide engineering services to make changes to plans prepared by Drexel. The plaintiff contracted with TNT to excavate the area where the foundation was to be located.

4. Notably, the Trolls' status is irrelevant. The relevant inquiry centers not around whether the original vendor of the property was a commercial entity, but rather whether Franklin Grove, the complaining party and the party against whom the economic loss doctrine is applied, was a commercial entity or a consumer.

The parties whose status is central to our inquiry are plaintiff and TNT. Both plaintiff and TNT are commercial entities that contracted for the construction of a house. Presumably, plaintiff entered this commercial venture for development and resale of the property to make a profit. Certainly this case can be distinguished from the facts in *Rousseau*. *Rousseau*, 727 A.2d at 191. In *Rousseau*, the plaintiff was an average consumer dealing with a commercial entity and thus was afforded greater protection under the law. *Id.* at 193. The plaintiff in the instant matter is an experienced commercial entity, and, therefore, it is not entitled to greater protection. Both plaintiff and TNT have been in the construction business for several years. Indeed, they have had a prior business relationship with each other; TNT has worked on approximately ten lots for plaintiff before the lot at issue in this appeal. Similar to the previous written contracts between the parties, plaintiff and TNT entered into a written contract to define their rights and obligations for this particular project. Accordingly, the proper course would have been for the parties to "utilize contract law to protect themselves from economic damages," which is the very essence of the economic loss doctrine. *E.W. Burman, Inc.*, 658 A.2d at 517.

Despite defendants' argument, this Court does not require that the commercial entities be "sophisticated." Rather, it is inherent in the very nature of a commercial entity that it is indeed sophisticated when compared with a consumer. The motion justice properly observed that "*Rousseau* does not stand for the proposition that only sophisticated businesses may have the doctrine invoked against them. Rather, the businesses * * * are presumed to be sophisticated as opposed to consumers * * *." The economic loss doctrine does not turn on how sophisticat-

ed the businesses are. Therefore, the consumer exception to the economic loss doctrine does not apply in the instant matter.

The defendants further contend that the economic loss doctrine has no validity because the relevant construction involved a personal residential dwelling, rather than commercial real estate. In our view, however, this is a specious argument. In making this assertion, defendants ignore the relevant inquiry—whether the *parties* are commercial entities versus consumers. As discussed above, the parties are indeed commercial entities; their status, therefore, invokes the economic loss doctrine. The proper focus is on the nature of the *parties*. It is of no consequence whether the development project, a commercial venture undertaken by commercial entities, ultimately will yield residential homes or commercial buildings.

■ The defendants' final argument is that the economic loss doctrine cannot defeat a statutory cause of action under the UCATA, and thus defendants properly can bring a claim for indemnification or contribution against TNT. Even though defendants' claims against TNT are statutory, they are essentially derivative in nature. As such, if the economic loss doctrine bars any tortious claim against TNT for purely economic damages, then certainly the derivative claims under the UCATA must fail as well. We previously have held that "[c]ontribution may be had if the aggrieved party has a cause of action 'against both the party seeking contribution and the party from whom contribution is sought.'" *R & R Associates v. City of Providence Water Supply Board*, 724 A.2d 432, 434 (R.I.1999) (quoting *Boucher v. McGovern*, 639 A.2d 1369, 1374 (R.I.1994)). Because the economic loss doctrine bars a primary negligence claim, plaintiff, who is the aggrieved party in this matter, is unable to

recover "against both the party seeking contribution and the party from whom contribution is sought." *Id.* The economic loss doctrine, therefore, will preclude recovery in this case under an indemnification or contribution theory as well.

This Court concludes, therefore, that the economic loss doctrine bars the plaintiff from asserting this negligence claim against TNT. Accordingly, the economic loss doctrine also bars the defendants from recovering against TNT under either an indemnification or contribution action when the primary cause of action would fail. Thus, the defendants' third-party derivative claims against TNT for indemnification or contribution also must fail.

### Conclusion

For the reasons stated herein, we affirm the judgment of the Superior Court. The record shall be remanded to the Superior Court.